966 A.2d 1 (2009)
405 N.J. Super. 499
Ted DEMPSEY, Sr., and Patricia Dempsey, individually and as guardians ad litem for their minor son, O.D., Plaintiffs-Appellants,
v.
Clarence ALSTON, Interim Superintendent of Pleasantville Public School District, Felicia M. Hyman, Assistant Principal of Pleasantville High School, and Pleasantville Board of Education, Defendants-Respondents.
No. A-4975-06T3
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 2008.
Decided March 5, 2009.
*4 George N. Polis, Ventnor City, attorney for appellants.
Hunt, Hamlin & Ridley, Newark, attorneys for respondents (Tracey S. Cosby, East Orange, of counsel and on the brief).
Anne Milgram, Attorney General, attorney for amicus curiae New Jersey Department of Education (Melissa H. Raksa, Deputy Attorney General, of counsel; Sookie Bae, Deputy Attorney General, on the brief).
Before Judges REISNER, SAPP-PETERSON and ALVAREZ.
The opinion of the court was delivered by
SAPP-PETERSON, J.A.D.
Plaintiffs Ted and Patricia Dempsey, individually and as guardians ad litem for their minor son, O.D., appeal from the denial of their motion for summary judgment *5 and the grant of summary judgment to defendants Clarence Alston (Alston), Felicia M. Hyman (Hyman), and the Pleasantville Board of Education (Board), dismissing their amended complaint in its entirety. Plaintiffs challenged the constitutionality of N.J.S.A. 18A:11-8 (the Act), which authorizes boards of education to adopt uniform dress codes in public schools and, in particular, the Board's adoption of its dress code policy. We affirm.
The salient facts are not in dispute. The Board adopted its school dress code policy in 2001. It did not, as part of its policy, include a formal opt-out program, but students were provided with opt-out forms that permitted them to opt out for religious and/or medical reasons. On January 3, 2006, O.D. enrolled in Pleasantville Middle School and attended classes without complying with the Board's dress code policy. On January 12, the Board advised O.D.'s father that O.D. was in violation of its dress code policy and that he was expected to comply with the policy. On February 2, plaintiffs submitted a "School Uniform Opt Out Request" form on behalf of their son. The stated reason for the opt-out request was: "Other: Constitutional Rights, Fundamental Freedom, Individual personal choice and Philosophical Beliefs." This request was denied.
Thereafter, O.D. was progressively disciplined for failure to comply with the dress code policy and, in March, he was suspended from school. In April, the suspension led to his in-home instruction placement, and he voluntarily accepted continued suspension. In June, O.D. graduated from the middle school after completing the required in-home instruction coursework.
On August 7, plaintiffs submitted another "School Uniform Opt Out Request" form based upon the following reasons: "Other: Constitutional Right, Spiritual Separation, Fundamental Freedom, Personal Individual Choice, Civil Rights, Civil Liberty, Philosophical Belief, Psychological Self Esteem, Discriminatory and Etc." The Board denied plaintiffs' request. When O.D. appeared for his first day of school at Pleasantville High School on September 8, school officials assigned him to in-school suspension for failing to comply with the dress code policy and advised him that he would continue to be disciplined if he failed to comply.
On September 26, plaintiffs filed a verified complaint against defendants Alston (interim superintendent of the Pleasantville Public School District), Hyman (assistant high school principal), and the Board, seeking an order compelling defendants to permit O.D. to attend the high school without having to comply with the Board's dress code policy, compensatory damages, and attorney's fees and costs. Defendants filed an answer to the verified complaint and opposed plaintiffs' motion for injunctive relief. On the November 1 return date of the Order to Show Cause, the court denied plaintiffs' request for preliminary injunctive relief. Plaintiffs filed an amended complaint challenging the constitutionality of N.J.S.A. 18A:11-8 and the Board's dress code policy. On January 22, 2007, the court granted the New Jersey Department of Education's (Department) motion to intervene as amicus curiae. Thereafter, plaintiffs and defendants filed summary judgment motions. Although defendants filed opposition to plaintiffs' motion, plaintiffs did not submit any opposition to defendants' motion.
The court conducted oral argument and, at its conclusion, issued a comprehensive and well-reasoned oral opinion on the record. The court issued an order denying plaintiffs' motion in its entirety and granting defendants' motion dismissing plaintiffs' amended complaint with prejudice.
*6 In reaching his decision, Judge William Todd, III, found that: (1) the Act satisfied the test set forth in United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672, 680 (1968), for a content-neutral regulation on expressive conduct; (2) the Act did not affect a substantial amount of protected speech and was therefore not overbroad; (3) no fundamental right was implicated by adoption of the school dress code policy; (4) the Act was rationally related to a legitimate State interest; and (5) the Board complied with the statutory requirements for adopting a school dress code policy. The present appeal followed.
On appeal, plaintiffs raise the following points for our consideration:
POINT ONE
THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' SUMMARY JUDGMENT [MOTION] AND FORBIDDING THE MINOR PLAINTIFF FROM ATTENDING CLASS AND PARTICIPATING IN SCHOOL ACTIVITIES WITHOUT HAVING TO WEAR A UNIFORM.
POINT [TWO]

N.J.S.A. 18A:11-8(b) IS UNCONSTITUTIONAL ON ITS FACE IN THAT IT USES THE WORD "MAY" AS OPPOSED TO THE CONSTITUTIONALLY REQUIRED "SHALL" WHEN IT PRESCRIBES AS FOLLOWS: "THE BOARD OF EDUCATION MAY PROVIDE A METHOD WHEREBY PARENTS MAY CHOOSE NOT TO COMPLY WITH AN ADOPTED SCHOOL UNIFORM POLICY."
POINT [THREE]
THE BOARD DID NOT AD[E]QUATELY COMPLY WITH THE ENABLING STATUTE'S REQUIREMENTS PRIOR TO ADOPTING THE SUBJECT UNIFORM POLICY.
Our analysis begins with a reiteration of the basic principles of appellate review. The standard of review of a trial court's grant of summary judgment is the same as that employed by the trial court. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). Summary judgment is appropriate where there is no genuine issue as to any material fact challenged. R. 4:46-2(c). The ultimate question in a summary judgment motion is whether, upon a review of the pleadings, deposition testimony and other competent evidence presented, in a light most favorable to the non-moving party, a rational fact-finder could resolve the alleged disputed issue in favor of the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). However, when the facts are not contested and the trial court's decision turns on a question of law, the "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). Under such circumstances, our review is de novo. Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549, 803 A.2d 53 (2002).
Plaintiffs claim that the Act is unconstitutional on its face because it does not mandate that a school board include an opt-out provision as part of its formalized dress code policy. Plaintiffs also contend that the Board's policy imposes an invalid restraint on O.D.'s First Amendment rights and "violates [their] rights of privacy as individuals and as participants in the parent[-]child relationship." Further, plaintiffs contend the policy infringes upon O.D.'s First Amendment right to "dress as he pleases[.]" Because it was unclear from the pleadings whether plaintiffs were *7 also challenging the constitutionality of the Act as applied, the trial court addressed plaintiffs' challenge to the Act under both theories. We do so as well.

I.
"[W]henever a challenge is raised to the constitutionality of a statute, there is a strong presumption that the statute is constitutional," State v. Muhammad, 145 N.J. 23, 41, 678 A.2d 164 (1996), and the party "challenging the constitutionality of a statute bears the burden of establishing its unconstitutionality." State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998). In analyzing the constitutionality of a statute, it is presumed that "the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner." NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 26, 543 A.2d 10 (1988) (quoting State v. Profaci, 56 N.J. 346, 349, 266 A.2d 579 (1970)).

A.
"[A] law that is challenged for facial vagueness is one that is assertedly impermissibly vague in all its applications." State v. Cameron, 100 N.J. 586, 594, 498 A.2d 1217 (1985). Conversely, a law that is challenged "as applied" is not necessarily vague in all respects but is vague as applied to facts of a particular case. Ibid. However,
[i]n either a facial or as-applied vagueness attack, the level of judicial scrutiny and degree of required clarity will depend on the purpose of the statute, the context in which the law is challenged, the conduct that is subject to its strictures, the nature of the punishment that is authorized, and, finally, the potential impact of the statute upon activities and interests that are constitutionally protected.
[Ibid.]
When a facial constitutional challenge to a statute is advanced, the effects on a particular individual are not dispositive. Rather, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707 (1987). Moreover, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d, 772, 783 (1984). Thus, in a facial challenge to a statute, the question is whether the "mere enactment" of a statute offends constitutional rights. Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 295, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1, 28 (1981).
Plaintiffs argue that the statute is facially unconstitutional because it does not require school boards to adopt an opt-out provision. Plaintiffs urge that in failing to mandate an opt-out policy as part of any school dress code policy, the Act violates their privacy and freedom of expression rights. Additionally, O.D.'s parents contend uniforms "stifle diversity and they consider diversity an important social good[,]" while O.D. objects to the "requirement of uniforms" because "it may also violate his understanding of parents' rights." We reject each of these contentions.
"The right of parents to raise their children without undue state interference is well established." Gruenke v. Seip, 225 F.3d 290, 303 (3d Cir.2000). The United States Supreme Court has made clear that there is a "fundamental right of parents to make decisions concerning the care, custody *8 and control of their children." Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 57 (2000). See e.g., Pierce v. Soc'y of Sisters, 268 U.S. 510, 534-35, 45 S.Ct. 571, 573, 69 L.Ed. 1070, 1078 (1925) (acknowledging right of parents to direct upbringing and education of their children); Meyer v. Nebraska, 262 U.S. 390, 401, 43 S.Ct. 625, 627, 67 L.Ed. 1042, 1046 (1923) (recognizing right of parents to control education of their children).
While the United States Supreme Court "has never been called upon to define the precise boundaries of a parent's right to control a child's upbringing and education," lower courts have held that the boundaries are not limitless. See C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 182 (3d Cir.2005) (stating the right of parents to control how their children are raised and educated is "neither absolute nor unqualified"). In particular, the right to familial privacy in the upbringing and education of a child is qualified in a school setting, where "the state's power is `custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults.'" Gruenke, supra, 225 F.3d at 304 (quoting Vernonia Sch. Dist. v. Acton, 515 U.S. 646, 655, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564, 576 (1995)).
Thus, "there may be circumstances in which school authorities, in order to maintain order and a proper educational atmosphere in the exercise of police power, may impose standards of conduct on students that differ from those approved by some parents." Ibid. "[I]n certain circumstances the parental right to control the upbringing of a child must give way to a school's ability to control curriculum and the school environment." C.N., supra, 430 F.3d at 182. Consequently, "[w]hile parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child." Blau v. Fort Thomas Pub. Sch. Dist., 401 F.3d 381, 395 (6th Cir.2005).
Enacted in July 1996, the Act grants local boards of education the discretion to implement dress code policies within their districts. The Legislature found and declared that
school dress can significantly influence pupil behavior and that schools that have adopted dress codes, including dress codes which require school uniforms and which prohibit clothing indicating membership in certain gangs, experience greater school pride and improved behavior in and out of the classroom. The Legislature further finds that to assist in controlling the environment in public schools, to facilitate and maintain an effective learning environment, and to keep the focus of the classroom on learning, school districts should be specifically authorized to implement uniform clothing requirements of their students.
[N.J.S.A. 18A:11-7.]
Under the Act, the decision to implement a dress code policy must be at the request of "the principal, staff and parents of an individual school," and must be based on a determination of the board of education that "the policy will enhance the school learning environment." N.J.S.A. 18A:11-8(a). A dress code policy may be adopted only after a public hearing and may not be implemented "with less than three months' notice to the parents or guardians of the students." Ibid. A key provision is subsection (b), which provides:
The board of education may provide a method whereby parents may choose not to comply with an adopted school uniform *9 policy. If the board provides such a method, a student shall not be penalized academically or otherwise discriminated against nor denied admittance to school if the student's parents choose not to comply with the school uniform policy.
[N.J.S.A. 18A:11-8(b) (emphasis added).]
Plaintiffs urge that because O.D. has a constitutional right to dress as he chooses, the opt-out policy must be mandatorily included in any school board's dress code policy. As a threshold, plaintiffs advance no legal authority to support their contention that students have a constitutional right to dress as they choose. Where no constitutional right is implicated, in enacting legislation authorizing school boards to adopt a school dress code policy, the Legislature is only required to establish a rational basis for its action. Alexander v. Whitman, 114 F.3d 1392, 1403 (3rd Cir.), cert. denied, 522 U.S. 949, 118 S.Ct. 367, 139 L.Ed.2d 286 (1997). See also State v. Lagares, 127 N.J. 20, 34, 601 A.2d 698 (1992). Under a rational basis review, "a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute." Sammon v. N.J. Bd. of Med. Examiners, 66 F.3d 639, 645 (3d Cir.1995).
Here, the stated purposes for the Act are to "assist in controlling the environment in public schools, to facilitate and maintain an effective learning environment, and to keep the focus of the classroom on learning." N.J.S.A. 18A:11-7. These stated purposes are rationally related to the State's legitimate interests in protecting and preserving the quality of its educational system. Ibid. Thus, the Act passes rational basis scrutiny. Because no constitutional right exists to dress as one chooses in a school setting, the absence of a mandatory opt-out policy of the type plaintiffs propose offends no constitutional guarantees.

B.
Plaintiffs next challenge the Act as an impermissible infringement upon their First Amendment right of expression. There is nothing in the record to suggest that defendants in any way attempted to place any restrictions upon plaintiffs' ability to voice objections to the dress code policy. To the extent plaintiffs urge that the act of dressing as O.D. chooses is expressive conduct protected under the First Amendment, this argument is unavailing.
Under the First Amendment to the United States Constitution, "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. I. This amendment has "been held applicable to the states by reason of the `liberty' protected by the Due Process and Equal Protection Clauses of the Fourteenth Amendment." Trombetta v. Mayor & Comm'rs of Atl. City, 181 N.J.Super. 203, 229, 436 A.2d 1349 (Law Div.1981) (citing Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138, 1145 (1925)), aff'd, 187 N.J.Super. 351, 454 A.2d 900 (App.Div.1982). The protections afforded under the First Amendment not only protect verbal speech but also non-verbal speech, characterized as "expressive conduct." R.A.V. v. St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305, 317 (1992). To qualify as expressive conduct protected by the First Amendment, the actor must have "[a]n intent to convey a particularized message ... and in the surrounding circumstances the likelihood [must be] great that the message would be understood by those who viewed it." Spence v. Washington, 418 U.S. 405, 410-11, *10 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842, 847 (1974).
In Blau, supra, the plaintiff, a sixth-grader, objected to her middle school's dress code policy. The court dismissed any suggestion that the student's desire to dress "as she chooses" could in any way be analogized, as the plaintiff asserted, to any of the seminal Supreme Court decisions upholding expressive conduct. 401 F.3d 381 at 388 (citing Tinker v. Des Moines Indep. Comm. Sch. Dist., 393 U.S. 503, 514, 89 S.Ct. 733, 740, 21 L.Ed.2d 731, 742 (1969) (holding a school district could not prevent students from wearing armbands to protest the Vietnam War)); see also Spence, supra, 418 U.S. at 415, 94 S.Ct. at 2732-33, 41 L.Ed.2d at 849 (1974) (declaring that a public school could not prevent a college student from hanging a flag with a peace sign upside down in his dormitory room window to express disappointment with the Cambodian incursion and the Kent State tragedy); O'Brien, supra, 391 U.S. at 382, 88 S.Ct. at 1682, 20 L.Ed.2d at 683 (burning a draft card to protest the Vietnam War implicated the First Amendment but could nonetheless be proscribed because the government had a substantial interest in the regulation of such conduct unrelated to the suppression of expression). The Blau court stated:
To say that Amanda Blau's desire to wear clothes she feels good in, as opposed to her desire to express any particular message, ... fits within this line of cases gives the invocation of precedent a bad name. In one of these cases, in point of fact, the Court expressly contrasted the right to wear a black arm band, a direct, primary First Amendment right[] akin to pure speech, with the permissible regulation of the length of skirts or the type of clothing, to hair style, or deportment. Not even being in a state of nudity, a world away from a middle school dress code and what amounts to the ultimate challenge to any dress code, is inherently expressive conduct, the Supreme Court has noted. And nude dancing itself is barely within the outer ambit of the First Amendment's protection.
[Blau, supra, 401 F.3d at 389 (internal citations and quotations omitted).]
Likewise, the record here disclosed no particularized message for which First Amendment protections were implicated. When deposed, O.D. was asked whether the clothing he wore expressed anything specific. He responded, "No." When questioned further as to whether his clothing said anything specific that someone other than himself would understand, he stated: "I guess, I am pretty much telling you that I have rights, yes." While the First Amendment's umbrella of protection for expressive conduct does not require that the particularized message be "succinctly articulable," Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 569, 115 S.Ct. 2338, 2345, 132 L.Ed.2d 487, 501 (1995), at a minimum, the expressive conduct must reflect an intent to convey a particularized message and the likelihood must be great that the expressive conduct would be understood as conveying the particular message. Spence, supra, 418 U.S. at 410-11, 94 S.Ct. at 2730, 41 L.Ed.2d at 847.
O.D.'s wearing of the clothing of his choice failed to meet this threshold requirement. O.D. testified that he was not attempting to express any particular message with his choice of clothing; rather, he simply did not want to be told what to wear. Moreover, because the opt-out policy allowed students to wear non-dress code clothing, for other reasons, it cannot be said that there was a genuinely disputed issue of fact created as to whether *11 there was a great likelihood that O.D.'s non-compliance would be understood by others as his particularized message protesting the school's dress code policy. Ibid. Thus, any claim that dressing as he "chooses" is expressive conduct protected under the First Amendment is without merit.
O.D.'s parents' reliance upon Pierce and Tinker to support their contention that they have a fundamental right to exempt O.D. from the Board's dress code policy is equally misplaced. First, Pierce simply upheld the right of parents to send their children to private schools and does not address the constitutionality of a public school dress code policy. At best, Pierce stands for the proposition that parents or guardians have a right to choose either public or private education for their children. Pierce, supra, 268 U.S. at 534-35, 45 S.Ct. at 573, 69 L.Ed. at 1078. It does not stand for the proposition that parents or guardians have a fundamental right to direct every aspect of their children's education. See Troxel, supra, 530 U.S. at 66, 120 S.Ct. at 2060, 147 L.Ed.2d at 57.
Similarly, the Court's decision in Tinker offers no support to plaintiffs' position. In Tinker, supra, the Court struck down a content-based restriction on "pure speech." 393 U.S. at 514, 89 S.Ct. at 740, 21 L.Ed.2d at 742. The Court did not consider a student's right to freedom of expression through the choice of clothing. Rather, it addressed a student's right to express a political opinion by wearing an armband. Ibid.
Defendants, and the Department as amicus curiae, argue that plaintiffs have failed to establish that O.D.'s conduct is entitled to First Amendment protection, but even if it was, the Act is content-neutral and passes constitutional scrutiny under the test articulated in O'Brien. The plaintiff in O'Brien, supra, was convicted in federal district court of burning his selective service registration certificate, which conduct he claimed was an act of "symbolic speech." 391 U.S. at 376, 88 S.Ct. at 1678, 20 L.Ed.2d at 679. His conviction was reversed on appeal to the First Circuit but upheld by the Supreme Court. The Court stated:
[W]e think it clear that a government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
[Id. at 377, 88 S.Ct. at 1679, 20 L.Ed.2d at 680.]
See also Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 902 F.Supp. 492, 518 (D.N.J.1995) (noting courts apply more relaxed level of scrutiny to content-neutral restrictions on speech and expressive conduct), aff'd, 99 F.3d 101, 107 (3d Cir.1996), cert. denied, 520 U.S. 1155, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997).
Here, the first O'Brien factor is satisfied because the Legislature's efforts to protect the safety of public school children and maintain order in the classrooms are clearly within the State's police powers. See e.g., Gruenke, supra, 225 F.3d at 304. Additionally, since the Legislature has a legitimate interest in protecting and preserving the quality of the State's educational system, the second O'Brien factor, the furtherance of a substantial governmental interest is also met. The third O'Brien factor requiring that the governmental interest be unrelated to the suppression of free expression, is satisfied because the Legislature's stated purpose of *12 improving classroom behavior "to facilitate and maintain an effective learning environment," N.J.S.A. 18A:11-7, is unrelated to the suppression of free expression.
Finally, the fourth O'Brien factor is satisfied because adopting a dress code policy was no greater than was essential to the furtherance of the State's interest. The Act's scope is limited and regulates only one form of conduct, namely, student attire during school hours. The Act does not regulate any form of expressive conduct, and there is no evidence that students were prohibited from expressing other viewpoints, such as through the wearing of buttons or jewelry. Because N.J.S.A. 18A:11-8 satisfies all four prongs of the O'Brien test, it is clear that the Act is content-neutral and does not violate federal constitutional law as a content-based restriction on free speech or expressive conduct.
Moreover, insofar as plaintiffs contend the absence of a mandatory opt-out policy in the Act renders it unconstitutionally vague or overbroad, this argument fails as well. For a statute to be unconstitutionally vague, it must "fail to give the ordinary citizen adequate notice of what is forbidden and what is permitted." City of Chicago v. Morales, 527 U.S. 41, 60, 119 S.Ct. 1849, 1861, 144 L.Ed.2d 67, 82 (1999). A statute is not vague when it uses ordinary terms that have common usage and understanding.
Here, the language of the Act is clear and is not so vague as to leave parents or students without knowledge of its requirements. Further, although plaintiffs claim that the Act is unconstitutionally vague because without an opt-out provision, it gives "unbridled discretion" to school officials, which may lead to discriminatory or arbitrary enforcement of the policy, such an argument does not justify facial invalidation. Turning to the question of overbreadth, any claim that the Act is unconstitutionally overbroad fails because there is no "realistic danger" that it will "significantly compromise recognized First Amendment protections of parties not before the Court." Taxpayers for Vincent, supra, 466 U.S. at 801, 104 S.Ct. at 2126, 80 L.Ed.2d at 784. Plaintiffs have failed to establish that the Act compromises any recognized First Amendment rights. Furthermore, even if the Act does implicate First Amendment rights, it does not affect a substantial amount of protected speech. "[A] law's application to protected speech [must] be `substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, before applying the `strong medicine' of overbreadth invalidation." See Virginia v. Hicks, 539 U.S. 113, 119-20, 123 S.Ct. 2191, 2197, 156 L.Ed.2d 148, 158 (2003) (citation omitted).

C.
To the extent plaintiffs urge that N.J.S.A. 18A:11-8 is unconstitutional as applied to O.D., plaintiffs present no facts to support this contention as a matter of law. As noted earlier, no First Amendment rights are implicated by applying the Act to O.D. because his non-compliance with the school dress code policy was not rooted in any desire to communicate any particularized message. Spence, supra, 418 U.S. at 410-11, 94 S.Ct. at 2730, 41 L.Ed.2d at 847. Nor is there any evidence that O.D. was subject to disparate treatment in the Board's enforcement of its school dress code policy. Likewise, no privacy interests are implicated, whether they arise in the context of O.D.'s individual privacy rights or the parent-child relationship. As previously discussed, there is no fundamental right to be exempt from a school dress code policy. See e.g., Blau, supra, 401 F.3d at 396; Littlefield v. Forney *13 Indep. Sch. Dist., 268 F.3d 275, 285-86 (5th Cir.2001). Also, protecting and preserving the quality of education through a dress code policy has been upheld as a legitimate and rationally-based governmental objective. Id. at 298. Accordingly, we reject plaintiffs' applied challenge to the statute.

II.
Plaintiffs additionally challenge the Board's dress code policy on the basis that it failed to comply with the Act's requirements for its adoption because: (1) the policy was not adopted on a school-by-school basis; (2) there is no evidence that a public hearing was held or that parents requested the Board to adopt a dress code policy; and (3) there was insufficient evidence before the Board to support its conclusion that a dress code policy would enhance the school learning environment.
Our careful review of the record in light of these contentions leads us to conclude that they are without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following comments.
Plaintiffs failed to provide any evidence to support their contention that the Board failed to comply with the Act's requirements for adopting a dress code policy. In fact, they did not present any evidence to dispute defendants' claim that the Board complied with the statutory requirements. See Weiss v. Cedar Park Cemetery, 240 N.J.Super. 86, 102, 572 A.2d 662 (App.Div. 1990) (stating that failure to adequately brief the issues requires dismissal). See also State v. Hild, 148 N.J.Super. 294, 296, 372 A.2d 642 (App.Div.1977) (noting a court is not obligated to search the record to substantiate an argument advanced in an appellate brief, and parties must justify their positions by specific reference to legal authority).
On the other hand, defendants provided undisputed evidence that the dress code policy was adopted in compliance with the requirements of N.J.S.A. 18A:11-8(a). Prior to adopting the policy, the Board established a uniform committee comprised of board members, administrators, staff, parents, and students of each school in the district. The committee met on several occasions to discuss the adoption of the dress code policy. The Board presented its proposed policy to the community at two open public meetings, giving those in attendance the opportunity to comment on the proposal. During one of those meetings, a student survey on uniforms was presented, model uniforms were worn, and ordering information was provided to the community. Furthermore, the dress code policy included a provision for economically disadvantaged students, and the policy was implemented with ample notice to the community. See N.J.S.A. 18A:11-8(a).
The trial court was satisfied defendants demonstrated that the Board complied with the Act in adopting its dress code policy.[1] Judge Todd specifically addressed the deficiencies in the record before the court:
I am convinced by [defense counsel's] argument and her reference to the record now that it would be inappropriate for [the court] to require the board to go through a trial with respect to the claim that the policy was not enacted in a manner consistent with the statute given the nature of the submissions that I *14 have.... The statute specifically requires that a board can adopt a dress code when that's requested by the principal, staff and a parent of an individual school and when the board determines the policy will have enhanced the school learning environment.... [T]he statute requires a public hearing prior to the adoption of the policy and some time limitation on its implementation. The documents that have been submitted by the board certainly indicate that those issues were dealt with. ... The proofs that I have from the defendant are in various ways under oath. There are depositions, there are answers to interrogatories, there are specific affidavits, and they deal with these issues in a reasonable amount of detail and I have no reason to reject them. Has the plaintiff offered anything in terms of competent proofs, some reference to any type of sworn testimony or some articulation of a reason why I should reject the records that have been submitted by the board? I don't think so. I haven't seen it in the record.
[(Emphasis added).]
Contrary to plaintiffs' contention, the record supports the conclusion that the Board complied with the requirements of N.J.S.A. 18A:11-8(a) in adopting the dress code policy, and plaintiffs presented no evidence to create a genuine issue of material fact otherwise. R. 4:46-2(c); Brill, supra, 142 N.J. at 539-41, 666 A.2d 146.
Affirmed.
NOTES
[1] Although requested by the Clerk's Office, plaintiffs never provided a complete listing of the summary judgment record as required by Rule 2:5-4. Moreover, documents referred to by the trial court, such as interrogatories and the responses thereto, were not produced on appeal.