**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4527-18

WILLIAM J. BRENNAN,

     Plaintiff-Appellant,

v.

COUNTY OF BERGEN,
KATHLEEN A. DONOVAN,
PETER INCARDONE, BRIAN
HIGGINS, JAMES GIBLIN, and
JAMES J. TEDESCO III (in their
individual and official capacities),

     Defendants-Respondents.

_____

Argued April 13, 2021 – Decided May 20, 2021

Before Judges Gilson, Moynihan, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7403-16.

Donald F. Burke argued the cause for appellant (Law Office of Donald F. Burke, attorneys; Donald F. Burke and Donald F. Burke, Jr., on the briefs).

Ashley L. Matias argued the cause for respondents County of Bergen, Brian Higgins, James Giblin, and James J. Tedesco, III (Chasan Lamparello Mallon &

Cappuzzo, PC, attorneys; Ashley L. Matias on the brief).

Thomas B. Hanrahan argued the cause for respondent Kathleen A. Donovan (Hanrahan Pack, LLC, attorneys; Thomas B. Hanrahan, of counsel and on the brief; Kathy A. Kennedy, on the brief).

Peter R. Yarem argued the cause for respondent Peter Incardone (Scarinci & Hollenbeck, LLC, attorneys; Peter R. Yarem, of counsel and on the brief).

PER CURIAM

Plaintiff William J. Brennan claims that his First Amendment rights were violated when he entered the Bergen County Administrative Building wearing a "Vote for Tedesco" t-shirt and was required to wait in the lobby while a County official determined that the building was not a polling place. He appeals from orders granting summary judgment to defendants, denying his cross-motion, and his motion for reconsideration. We affirm.

I.

We take the facts from the record, viewing them in a light most favorable to plaintiff, the non-moving party. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

In late October 2014, plaintiff watched a video on social media showing that three sheriff's officers had been denied entrance to One Bergen County Plaza (Bergen Plaza) because they were wearing "Tedesco" shirts. At that time, James Tedesco was running against the incumbent Kathleen Donovan to be the County Executive.

Bergen Plaza was the County's administrative building, and it contained the offices of the County Executive, Administrator, Clerk, and Superintendent of Elections. Certain areas of the building were open to the public during normal business hours, but other areas had restricted access. When members of the public entered the building, they were required to go through a security checkpoint.

In October 2014, citizens of the County were casting vote-by-mail ballots at the Bergen Plaza for the upcoming November 2014 general election. Accordingly, voters were able to pick up and drop off their ballot in the building.

On October 30, 2014, plaintiff, accompanied by a cameraman, entered Bergen Plaza wearing a "Vote for Tedesco" t-shirt. After passing through the security checkpoint, plaintiff was stopped by a Bergen County police officer, who informed him that he could not wear the t-shirt in the building because it was a polling place. Plaintiff disputed the officer's view and within several

minutes James Giblin, the Assistant Director of Security for the County, spoke with plaintiff. Giblin asked plaintiff to remain in the lobby while he determined whether the building was a polling place.

Sometime later, Giblin returned and told plaintiff that he was free to go about his business in the building. At no time was plaintiff told to remove or cover his t-shirt, and once it was determined that the building was not a polling place, he was permitted to walk in those parts of the building that were open to the public. Plaintiff then went to the Superintendent of Elections' office and spoke with the Superintendent, who confirmed that the building was not a polling place on October 30, 2014, and was considered a polling place only on Election Day.

In support of his position, plaintiff submitted a video of the incident, which he also shared publicly on YouTube under the title "Truth to power – Bill Brennan." The video is approximately twelve minutes long and depicts plaintiff's interactions with the unidentified police officer, Giblin, and the Superintendent of Elections. The video indicates that plaintiff was delayed in the lobby for approximately seven minutes and thirty seconds, but plaintiff later claimed that he was delayed for up to forty-five minutes and the cameraman had periodically stopped filming.

A-4527-18

Approximately two years later, in October 2016, plaintiff filed a complaint against the County, Donovan, Giblin, Tedesco, Peter Incardone, who had been Deputy Chief of Staff for Donovan, and Brian Higgins, the Chief of the Bergen County Police Department. Plaintiff alleged violations of his federal and state constitutional rights to free speech and expressive activity, and he sought a permanent injunction prohibiting the County and County officials from suppressing free speech and political support for candidates in the Bergen Plaza.

On July 18, 2017, the trial court entered an order dismissing the claims against Tedesco for failure to state a claim upon which relief can be granted. Plaintiff has not appealed from that order.

The remaining parties engaged in discovery. Plaintiff did not depose any defendant; instead, he notified defendants that he would rely on discovery taken in a federal action brought by several Bergen County police officers against the County and County officials. In October 2014, several Bergen County police officers had filed actions against the County and County officials, alleging that their constitutional rights had been violated when they were not allowed to enter Bergen Plaza while wearing t-shirts supporting Tedesco. Those actions were consolidated. Romero v. Cnty. of Bergen, No. 14-cv-6804-SDW (D.N.J. Dec.

1, 2015); <u>Tassillo v. Cnty. of Bergen</u>, No. 14-cv-6840-ES (D.N.J. Dec. 1, 2015). In December 2017, the federal action was dismissed after the parties settled.

In this action, defendants moved for summary judgment after the close of discovery and plaintiff cross-moved for summary judgment. The trial court heard oral argument. Thereafter, on March 21, 2019, the trial court issued a written opinion and orders granting summary judgment to defendants and dismissed plaintiff's complaint with prejudice. The court also denied plaintiff's cross-motion.

The trial court determined that plaintiff had not been restricted from entering Bergen Plaza. The court found the undisputed facts established that plaintiff was always free to leave the building, was never asked to take off or cover his t-shirt and was delayed for only as long as it took County officials to determine that the building was not a polling place. Consequently, the trial court rejected plaintiff's contention that his expressive activity and speech were suppressed or chilled.

The trial court also found that Bergen Plaza was a limited public forum and that any delay of plaintiff in the lobby was reasonable. In addition, the trial court found that there was no evidence of a conspiracy among the individual

6

defendants to improperly suppress campaigning against Donovan in the building.

Plaintiff moved for reconsideration. The trial court denied that motion in an order issued on June 7, 2019, and supported that ruling with a written opinion.

II.

On appeal, plaintiff makes two arguments. First, he contends that defendants engaged in content-based restrictions on his political speech by falsely asserting that the Bergen Plaza was a polling place. In connection with that argument, plaintiff claims that the restrictions on his expressive speech were not narrowly tailored to serve a compelling state interest. Second, he contends that the trial court mischaracterized his claim as a "momentary restriction" of his political speech and failed to apply a strict scrutiny analysis. We reject these arguments because they are not supported by the record.

We review a grant of summary judgment using the same standard that governs the motion court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact"

7

and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R. 4:46-2(c).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion court's legal analysis. RSI Bank, 234 N.J. at 472 (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

## A.

Initially, we clarify what is at issue. Plaintiff is not claiming that he was illegally detained in violation of his Fourth Amendment right against seizure of his person. The undisputed material facts establish that plaintiff could have left Bergen Plaza whenever he chose. This is a First Amendment case in which plaintiff relies on the New Jersey Civil Rights Act (CR Act), N.J.S.A. 10:6-1 to -2.

The CR Act provides a means of "vindicating substantive rights" guaranteed by federal and New Jersey law, including the Constitutions of the

United States and New Jersey. <u>Gormley v. Wood-El</u>, 218 N.J. 72, 98 (2014). In relevant part, the CR Act provides that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

Under the CR Act, "the party alleging a claim must show a violation of a substantive right or that someone 'acting under color of law' interfered with or attempted to interfere with a substantive right." <u>State v. Quaker Valley Farms, LLC</u>, 235 N.J. 37, 64 (2018) (citing N.J.S.A. 10:6-2(c)).

Political expression is protected by the First Amendment of the United States Constitution and by Article I, Paragraphs 6 and 18 of the New Jersey Constitution. <u>See</u> <u>Mazdabrook Commons Homeowners' Ass'n v. Khan</u>, 210 N.J. 482, 486 (2012) (recognizing that political speech "is protected by the State Constitution, which affirmatively guarantees the right of free speech to all citizens"); <u>G.D. v. Kenny</u>, 205 N.J. 275, 303 (2011) (explaining that "[t]he right

to speak freely on matters of public concern and the right to criticize a candidate for public office implicate core values protected by our [F]ederal and [S]tate [C]onstitutions").

Indeed, political speech "is entitled to the highest level of protection in our society." Dublirer v. 2000 Linwood Ave. Owners, Inc., 220 N.J. 71, 85 (2014). Accordingly, under both the Federal and New Jersey Constitutions political speech and expression are accorded broad protection. Buckley v. Valeo, 424 U.S. 1, 14 (1976); Mazdabrook, 210 N.J. at 499.

"The protections afforded under the First Amendment not only protect verbal speech but also non-verbal speech, characterized as 'expressive conduct.'" Dempsey v. Alston, 405 N.J. Super. 499, 514 (App. Div. 2009) (citing R.A.V. v. St. Paul, 505 U.S. 377, 382 (1992)). "To qualify as expressive conduct protected by the First Amendment, the actor must have '[a]n intent to convey a particularized message . . . and in the surrounding circumstances the likelihood [must be] great that the message would be understood by those who viewed it.'" Ibid. (alterations in original) (quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974)). A ban on wearing political t-shirts "plainly restricts a form of expression within the protection of the First Amendment." Minn. Voters All. v. Mansky, 138 S. Ct. 1876, 1885 (2018).

Nevertheless, "[l]ike most rights, the rights protected by the First Amendment are subject to reasonable restrictions."  In re Att'y Gen.'s Directive on Exit Polling, 200 N.J. 283, 304 (2009); see also Virginia v. Black, 538 U.S. 343, 358 (2003) (recognizing that "protections afforded by the First Amendment . . . are not absolute" and "the government may regulate certain categories of expression consistent with the Constitution").

Accordingly, our Supreme Court has held that New Jersey election laws N.J.S.A. 19:34-6, -7, and -15, which ban all expressive activities within 100 feet of a polling place "are reasonable time, place, and manner restrictions under the First Amendment intended to secure and enhance another vital constitutional right – the right to vote."  In re Att'y Gen.'s Directive, 200 N.J. at 288.  In that case, the Court found that "the Legislature intended that voters would have a 100-foot free, unobstructed passage to the polling place, without interference from any person, whether that person is conducting exit polling or handing out voting-rights cards.  The ban applies to all expressive activities within that zone, however seemingly laudable or ignoble."  Ibid.; see also Burson v. Freeman, 504 U.S. 191, 193-95 (1992) (finding no First Amendment violation in a content-based Tennessee statute that prohibited electioneering within 100 feet of a polling entrance).

Applying this well-established law to this case, the undisputed material facts show no violation of plaintiff's First Amendment rights. It is undisputed that plaintiff entered Bergen Plaza wearing the "Vote for Tedesco" t-shirt. At no time was he asked to remove or cover his t-shirt and he wore the shirt the entire time he was in the building.

Plaintiff claims that he was "detained" in the lobby for forty-five minutes. The undisputed facts, however, establish that plaintiff was delayed from moving about the building by an unidentified police officer whom plaintiff never named as a defendant. More critically, plaintiff was delayed in the lobby for as long as it took Giblin to determine whether Bergen Plaza was a polling place and, consequently, whether any election restrictions were in effect.

The political message contained on plaintiff's t-shirt was visible to people entering and leaving Bergen Plaza. Accordingly, to the extent that plaintiff has a complaint, it is the delay in moving beyond the lobby and into the other public areas of the building. Plaintiff testified that he was not in the building to conduct any business; rather, he had come to the building with the sole purpose of challenging what he believed were restrictions on political expression. After some delay, plaintiff was allowed to move beyond the lobby and was given free access to all the parts of the building that were open to the public. Those

12

undisputed facts establish that no defendant interfered with or attempted to interfere with plaintiff's First Amendment rights.

B.

Stripped of rhetoric, plaintiff's real complaint is the delay in his ability to move beyond the lobby of Bergen Plaza. The record does not clearly establish the length of the delay. On the video, it appears that plaintiff waited approximately seven minutes while Giblin checked to see if the building was a polling place. Plaintiff contends, however, that the video was periodically turned off and he may have been delayed as long as forty-five minutes.

He reaches that time by adding the full twelve minutes of the video to twenty minutes when the recording device was reportedly turned off. That math is not supported by the record because plaintiff was given access to Bergen Plaza eight minutes into the video. Consequently, even if we accept plaintiff's contention that the video was turned off for twenty minutes, that delay would be approximately twenty-eight minutes. Nevertheless, giving plaintiff every reasonable inference, we have added an extra two minutes for a total delay of thirty minutes.

Accordingly, the issue is whether the thirty-minute delay in access to Bergen Plaza was unconstitutional. The only defendant who interacted with

13

plaintiff while he was in the lobby was Giblin. Giblin testified in the federal action brought by the sheriff's officers that he had previously been advised that the building was an active polling place and therefore no campaigning could be conducted in the building. On October 30, 2014, when plaintiff came to Bergen Plaza, however, Giblin checked and learned that Bergen Plaza was not a polling place on that day.

If Bergen Plaza had been a polling place on October 30, 2014, Giblin could have denied plaintiff entry into the building under New Jersey's election laws. See N.J.S.A. 19:34-6; In re Att'y Gen.'s Directive, 200 N.J. at 288. Plaintiff has presented no evidence that Giblin interfered with his First Amendment rights by threats, intimidation, or coercion. See N.J.S.A. 10:6-2(c). The video and plaintiff's own testimony establish that both the unidentified officer and Giblin were polite in dealing with plaintiff. The best he can show was that Giblin was initially mistaken in thinking that Bergen Plaza was a polling place.

## C.

Plaintiff also argues that there was a conspiracy to suppress political speech and it was that conspiracy that caused his delayed entry into Bergen Plaza. That argument fails for two reasons.

14

First, to establish the conspiracy, plaintiff relies on discovery taken in the federal action brought by the County police officers. Those officers were denied access to the Bergen Plaza on October 23, 2014. Higgins testified that he was told Bergen Plaza was a polling place because absentee ballots were dropped off there. Giblin testified that Incardone and Higgins advised him that the building was an active polling place and, therefore, no campaigning could be conducted in the Plaza. Incardone testified that he did not speak to Higgins or Giblin about enforcing election laws. Even if we view those facts in a light most favorable to plaintiff, those facts only show that there may have been a policy on October 23, 2014.

The undisputed facts in this case establish that plaintiff was not denied access to the building on October 30, 2014. Instead, as already discussed, his movement beyond the lobby was delayed while it was determined that Bergen Plaza was not a polling place on October 30, 2014. Consequently, plaintiff can show no conspiracy in place on October 30, 2014.[1]

---

[1] Defendants contend that we should not consider the discovery taken in the police officers' federal action because there was a protective order in that matter. The protective order covered confidential information and, in particular, an internal affairs investigation concerning the activities of one of the officers. The testimony plaintiff submitted was not protected by the protective order because it does not involve confidential information or the internal affairs investigation.

A-4527-18

Given our holding that plaintiff has shown no interference with his constitutional rights, we need not address his arguments about strict scrutiny and whether the delay in his entrance was narrowly tailored to support a compelling state interest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

To the extent that defendants seek to overread the scope of the protective order, we reject that argument.