**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2975
_____

UNITED STATES OF AMERICA

v.

DAVID BAGDY,
                    Appellant


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-07-cr-00191-001)
District Judge: Honorable David S. Cercone
_____


Argued May 13, 2014

Before:   SMITH, VANASKIE, and SHWARTZ, *Circuit
Judges.*

(Filed: August 21, 2014)

Candace Cain, Esq. [Argued]
Office of the Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222
     *Counsel for Appellant*

Donovan J. Cocas, Esq. [Argued]
Rebecca R. Haywood, Esq.
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
     *Counsel for Appellees*

_____

OPINION
_____

VANASKIE, *Circuit Judge.*

At issue on this appeal is whether supervised release may be revoked and an offender sent to prison based upon a District Court's finding that the offender acted in bad faith in relation to his obligation to make restitution to the victims of his criminal conduct. In this case, although Appellant David Bagdy complied with the letter of the District Court's restitution order by ultimately paying more than one-third of a $435,000 inheritance he had received while on supervised release, he engaged in a lavish spending spree that dissipated the balance of the inheritance while delaying the proceedings intended to modify the restitution order. Like the District

Court, we find Bagdy's conduct reprehensible. We conclude, however, that the District Court could not revoke supervised release for such bad faith conduct because Bagdy did not violate a specific condition of supervised release in relation to the restitution obligation. Accordingly, we will vacate the judgment and remand for further proceedings.[1]

I.

Bagdy pled guilty to a charge of wire fraud arising from a scheme to embezzle hundreds of thousands of dollars from a small family-owned lumber business for which he served as a consultant. The District Court sentenced him to 36 months' imprisonment and three years of supervised release. The District Court also ordered that Bagdy make restitution in the amount of $566,115.57. As a condition of supervised release, the District Court ordered that Bagdy "make periodic payments of at least ten percent of his gross monthly income toward any outstanding balance of restitution. Payments shall be made in such amounts and at such times as directed by his probation officer and approved by the Court." App. 32-33. Furthermore, Bagdy was required to "provide his probation officer with access to any requested financial information" to enable the probation

---

[1] Bagdy may have violated other conditions of supervised release. For example, he may have violated a condition that required him to make certain reports to his probation officer on financial matters. On remand, the District Court is free to consider whether Bagdy violated a specific condition of supervision, and, if so, what the appropriate sanction for that violation should be.

office to determine an appropriate payment schedule. App. 33.

Bagdy completed his prison term and commenced supervised release in July of 2011. In March of 2012, Bagdy reported to his probation officer that he had received $409,799.13 in inheritance from his aunt. Bagdy consulted with his probation officer regarding his restitution obligation in regards to the inheritance and paid $41,000 of the total toward restitution. Bagdy maintains that this contribution reflected the ten percent of his gross monthly income that he believed the District Court's judgment obligated him to put toward restitution.

On April 9, 2012, the government filed a motion to modify the order of restitution under 18 U.S.C. § 3664(k).[2]

[2] Section 3664(k) instructs that:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the

4

Shortly after filing the motion, the government met with Bagdy and his counsel in an attempt to reach a settlement as to the amount of his inheritance Bagdy would put toward restitution. Although no formal agreement was reached at the meeting, Bagdy contributed an additional $60,000 of his inheritance toward restitution and remained in communication with the government regarding a possible settlement.

While negotiations between the government and Bagdy continued, Bagdy requested several extensions of time to file a response to the government's § 3664(k) motion, representing to the District Court that he was engaged in "good faith negotiations to resolve all restitution issues by agreement" with the government. Government's Supp. App. 9. For months, the government did not oppose Bagdy's extension motions and the District Court granted five of them. When no settlement had been reached as of early November 2012, the government emailed Bagdy's counsel to express its concern that Bagdy may be stalling the hearing while depleting his inheritance.

---

defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

The District Court finally held the § 3664(k) hearing on December 3, 2012. At the hearing, the government informed the District Court that Bagdy had inherited from his aunt an additional $25,000 that it had previously been unaware of, bringing his total inheritance to $434,799.13. The government also told the court that it had just learned that Bagdy had spent all but about $52,000 of the inheritance. The government requested to have Bagdy's conditions of supervised release modified to order payment of the $52,000 balance of his inheritance. Bagdy's counsel did not object and the District Court granted the motion.[3]

The government candidly acknowledged that it did not know if Bagdy had violated any condition of supervised release by depleting his inheritance. The District Court instructed the government to "[c]onsult with the probation department and do your research and look for precedent and see if potentially if the bad faith on the part of the Defendant under all of these circumstances somehow constitutes a constructive breach of the conditions [of supervised release]." App. 58.

On February 6, 2013, the government filed a motion requesting that the District Court hold a hearing regarding Bagdy's alleged violation of his supervised release. The motion noted that "since receiving a total of $434,000 last year from an inheritance, the defendant has paid $152,048.48 toward restitution, and has spent the remaining $281,952."

_____

[3] Thus, approximately $153,000 from an inheritance of nearly $435,000 was applied against the restitution obligation of more than $565,000.

6

App. 69. The government's motion detailed Bagdy's expenditures during this period, as reported to the probation office, but also alleged that copies of Bagdy's bank records reflected additional expenditures that had not been reported to the probation office. Unreported expenditures included $41,000 in ATM withdrawals, $21,800 in Western Union transfers, and $5,800 in purchases from a business named Fragile Paradise Florist. The government argued that Bagdy's failure to put a greater amount of his inheritance toward restitution while making extravagant personal expenditures constituted a willful violation of the conditions of supervised release.

At the June 4, 2013 hearing on the motion, the government maintained that Bagdy's conditions of supervised release required him to pay the full amount of restitution and that "[t]he requirement that he pay not less than 10 percent is merely setting a floor during the term of his supervised release that he has to satisfy." App. 117. Bagdy's counsel responded by contending that "a specific violation of a condition of this Court's judgment has not been adequately alleged" because nothing in the restitution order had indicated that Bagdy could be found in violation for not making payments in good faith. App. 115.

The District Court concluded:

> Mr. Bagdy, I have to agree with the Government, I think that your conduct in this case, you knew you owed this money, and to have inherited this large sum and to spend it the way you did was not acting in good faith and it does

7

> constitute a violation of my restitution order. So I do find that you violated the condition and I am going to sentence you to six months incarceration.

App. 120. This appeal followed.[4]

## II.

The District Court had jurisdiction under 18 U.S.C. § 3583(e)(3) and we have jurisdiction under 28 U.S.C. § 1291. "The District Court's decision to revoke supervised release is reviewed for abuse of discretion. However, the factual findings supporting that decision are reviewed for clear error; legal issues are subject to de novo review." *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008) (internal citations omitted).

## A.

A District Court may revoke a defendant's supervised release and impose a term of imprisonment "if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of . . . supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . ." 18 U.S.C. § 3583(e)(3). The issue presented here is whether Bagdy violated a specific condition of supervised release by remitting only $152,048.84 from his inheritance.

---

[4] The District Court agreed to allow Bagdy to continue under supervision pending this appeal.

8

We have repeatedly expressed concern that conditions of supervised release be sufficiently clear to enable individuals on supervised release to freely choose between compliance and violation. In this regard, our precedents require that conditions of supervised release provide a defendant with "adequate notice of what he may and may not do . . . ." *United States v. Loy*, 237 F.3d 251, 267 (3d Cir. 2001). Similarly, we have held that conditions of supervised release "must provide specific standards which avoid arbitrary and discriminatory enforcement." *Maloney*, 513 F.3d 350, 357 (3d Cir. 2007) (quoting *Tolchin v. Supreme Court of New Jersey*, 111 F.3d 1099, 1115 (3d Cir. 1997)).

At the revocation hearing, the District Court did not identify an explicit condition of supervised release that Bagdy had violated.[5] The District Court took issue with Bagdy's depletion of his inheritance on personal expenses, finding that the dissipation of assets constituted bad faith in light of Bagdy's obligation to make complete restitution to his victims. Bagdy, however, had informed his probation officer and consulted the officer before making his initial payment of

[5] The District Court's written order found that Bagdy's conduct had violated the condition of supervised release "directing that the defendant make periodic payments of at least ten (10%) percent of his gross monthly income toward the outstanding balance of restitution." App. 1. The revocation hearing transcript makes clear that the District Court believed Bagdy's depletion of his assets violated a duty of good faith implied by that condition, rather than the explicit terms of the condition itself. It is undisputed that Bagdy paid more than 10% of his inheritance toward restitution.

$41,000. Regarding payment, the judgment setting forth the conditions of supervised release provided that "[t]he defendant shall make periodic payments of at least ten (10%) percent of his gross monthly income toward the outstanding balance of restitution. Payments shall be made in such amounts and at such times as directed by his probation officer and approved by the court." App. 40. There is nothing to suggest that Bagdy failed to make payment as directed by his probation officer. Bagdy's failure to preserve a greater portion of his inheritance for satisfaction of the restitution order was not, on its own, a violation of the conditions of supervised release.[6]

The District Court found Bagdy in violation of supervised release for behavior that was not prohibited by an express condition of the judgment setting forth his conditions of supervised release. The question then is whether supervised release may be revoked where a defendant's conduct supports a finding that he did not act in good faith in discharging his obligation to make restitution in full.

---

[6] The government argues that, by not disclosing numerous personal expenditures he made that exceeded $500, Bagdy violated a condition of supervised release that required him to "report to the probation officer as directed by the court or probation officer and . . . submit a truthful and complete written report within the first five days of each month." App. 41. Although the record appears to support the government's claim that Bagdy was not forthcoming with probation regarding his expenditures, the District Court did not find him in violation of this condition at his revocation hearing. The District Court should consider on remand whether Bagdy can be found in violation of this condition of supervised release.

B.

The government argues that, although no good faith term appeared in Bagdy's conditions of supervised release, the Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660 (1983), authorizes a District Court to revoke supervised release when an offender fails to act in good faith with respect to paying restitution. *Bearden* addressed a situation in which an indigent defendant had failed to make the minimum payments required by the express terms of the conditions of his probation. The trial court had ordered the defendant "to pay $100 that day, $100 the next day, and the $550 balance within four months." *Id.* at 662. When the defendant was incapable of obtaining work that would allow him to pay restitution on that schedule, the trial court revoked his probation and sentenced him "to serve the remaining portion of the probationary period in prison." *Id*. at 663.

The Supreme Court held that the trial court was required to conduct an inquiry into the indigent defendant's ability to pay before revoking his probation and could not "automatically turn[] a fine into a prison sentence" for an indigent defendant who had failed to adhere to his payment schedule. *Id*. at 674. While holding that a trial court may not revoke probation "[i]f the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so," the Court also observed that the trial court could revoke probation "[i]f the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay." *Id*. at 672. The government seizes upon the Court's reference to the offender's "bona fide efforts" to make restitution as imposing an implied duty of good faith. What the government's argument ignores, however, is that there was a violation of the terms of

11

supervision in *Bearden*: the offender had not made payments according to the court-imposed payment schedule. The offender's bona fide efforts were relevant to whether the offender could be sent to prison for having failed to make the requisite payments. Thus, the good faith inquiry mandated by *Bearden* comes into play when nonpayment of a monetary sanction is in fact a violation of the conditions of probation or supervised release. Unlike *Bearden*, Bagdy's failure to pay more than $152,000 of his inheritance towards restitution did not violate an explicit condition of supervision. And the conditions of Bagdy's supervised release did not require that he make good faith efforts to pay his restitution.

C.

The government also directs our attention to the informal agreement that it reached with Bagdy in early 2012, which provided that Bagdy would not deplete his inheritance prior to reaching a settlement with the government. Even if Bagdy's conduct breached such an agreement, honoring that agreement was not a condition of supervised release.

To avoid the occurrence of a similar situation in the future, District Courts may wish to consider adding a term to conditions of supervised release that would provide for contingencies where a defendant with a restitution obligation comes upon an unforeseen inheritance or windfall. Such a term might prohibit defendants from spending a certain percentage of contested funds during the pendency of a § 3664(k) motion. In the absence of any such term in this case, we cannot affirm the District Court's decision to revoke Bagdy's supervised release for actions that were not in violation of his conditions of supervised release.

III.

For the foregoing reasons, we will vacate the District Court's judgment, and remand for additional proceedings. Although the record suggests that Bagdy's conduct may have violated other conditions of supervised release, we will leave that determination for the District Court on remand.