# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2154-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

D.D.Z.,[1]

     Defendant-Appellant.

_____

Submitted June 2, 2022 — Decided June 16, 2022

Before Judges Mawla and Alvarez.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Accusation No. 19-10-0973.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Jaimee M. Chasmer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

---

[1] We use initials to protect the identity of the minor. R. 1:38-3(c)(9).

Defendant D.D.Z. appeals from a January 14, 2021 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

In 2002, defendant was convicted on federal charges of using an interstate facility to entice a minor for sex, 18 U.S.C. § 2422(b), by soliciting a fifteen-year-old male for sexual activity via the internet. Defendant was sentenced to federal prison and probation. During his detention, defendant's five-year-old nephew alleged defendant inappropriately touched him between February 1997 and February 1998.[2] This led to defendant's conviction for second-degree sexual assault of a child less than thirteen years old, N.J.S.A. 2C:14-2(b), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). He was sentenced in 2005, required to register under Megan's Law, N.J.S.A. 2C:7-1 to -23, and placed on community supervision for life (CSL), N.J.S.A. 2C:43-6.4(d).

Following defendant's release from federal prison in April 2009, he was transferred to the Adult Diagnostic and Treatment Center and subsequently

---

[2] Defendant also had a 1988 conviction for sexual acts with a child, N.J.S.A. 2C:24-4(a), and sexual assault of a child less than thirteen years of age, N.J.S.A. 2C:14-2(b).

released in February 2019.  Upon his release, defendant signed a form acknowledging the imposition of a special condition to his CSL, stating:

> I am to refrain from the possession and/or utilization of any computer and/or device that permits access to the [i]nternet unless specifically authorized by the District Parole Supervisor or designated representative.  If the District Parole Supervisor or designated representative permits use of a computer and/or device that is capable of accessing the [i]nternet, I understand that I am subject to the following restrictions and conditions concerning my use . . . .

On July 10, 2019, probation officers conducted an unannounced visit at a home defendant shared with his sister.  Although officers had previously advised defendant's sister to keep her laptop password protected and advised defendant they would be checking to make sure it was, defendant logged into the machine without a password during the home visit.  After officers Mirandized[3] defendant, he admitted he used a program to override the computer's lock to access the internet.  Defendant claimed to be using the computer to search for employment.

Defendant was arrested and charged with fourth-degree violation of CSL and parole, N.J.S.A. 2C:43-6.4(d).  He waived indictment and pled guilty to the charge.  At the plea hearing, he testified his attorney met with him in person and by telephone several times, reviewed the discovery, discussed pre-trial motions

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2154-20

that could be filed in the case, and answered all of his questions to his satisfaction. Additionally, the following colloquy occurred:

> [The court]: Further, if you were to come back later and claim that you were forced . . . to enter the guilty plea or that your attorney told you you had no choice but to plead guilty or that you did not have sufficient time to speak with your attorney or that you're unhappy with your attorney's services, or that someone promised you something that is not set forth on the record contained in the plea form . . . I'd have a great difficulty believing you because you've testified today that none of these occurred. Do you understand that, sir?
>
> [Defendant]: I understand.

The judge accepted the plea.

In her sentencing memorandum and at the sentencing hearing, defense counsel argued defendant previously retained her to petition the parole board to modify his CSL conditions "to allow him to access an [i]nternet-capable device with monitoring software installed . . . to search for jobs. [But, p]rior to the . . . [b]oard's determination . . . [defendant] was charged with the instant offense." Counsel argued defendant's offense was a "technical" violation because he did not commit a new sex offense and no evidence was produced showing he accessed his sister's computer for a nefarious reason. She asserted the judge should apply mitigating factor N.J.S.A. 2C:44-1(b)(4), namely, that "substantial grounds tending to excuse or justify the defendant's conduct, though failing to

4

establish a defense" because defendant "did not wait for [p]arole to grant his request[;] instead his desperation and frustration in trying to obtain employment to no avail caused him to access his sister's computer for that purpose."

Counsel cited two psychological reports defendant obtained for the parole board petition, which opined he was a low risk for reoffending. One evaluation noted "it may be possible to allow [defendant] the use of a computer with access to the [i]nternet without increasing his risk of sexually re-offending or of otherwise harming someone in the community." The second evaluation opined defendant's computer use

> constitutes impaired judgment and poor problem-solving. He could have lobbied parole, either himself or through his attorney, for limited [i]nternet access combined with [i]nternet monitoring software, so that he could search for a job over the [i]nternet. He had already appropriately taken initial steps to do just that . . . . [The other psychologist] recommended that he be given [i]nternet/computer access, assuming that his [i]nternet access was monitored by his parole officer; this is a recommendation with which I agree. [Defendant's] primary fault in this case appears to be lack of patience and persistence in attempting to have his CSL computer-related restriction modified.

The defense cited J.I. v. New Jersey State Parole Board, 228 N.J. 204 (2017), and United States v. Holena, 906 F.3d 288 (3d Cir. 2018), arguing "that in recent years there ha[s] been some significant case law regarding concerns

about the unconstitutionality of imposing blanket . . . internet ban conditions without narrow tailoring or attaching reasonable conditions on those bans." As a result, counsel argued D.D.Z should not have pled guilty to the offense.

The State countered it did not have to prove defendant accessed the computer to commit a sex offense because he admitted he installed a program on his sister's computer to bypass her password. Defendant's admission and the fact he previously only accessed the computer in his sister's presence, dispelled his self-serving argument regarding the constitutionality of the CSL provision restricting his internet access.

The judge found defendant's argument that he accessed the internet surreptitiously to search for employment "flies in the face of logic" but nonetheless gave it "light weight" as a mitigating factor. He concluded there was objective evidence that defendant would reoffend and "[t]he aggravating factors outweigh the mitigating factors . . . by 200 percent." He sentenced defendant to 365 days incarceration with fines and penalties and parole eligibility after four months.

In March 2020, defendant filed this PCR petition. He challenged the parole board's total ban on internet use. PCR counsel was assigned and filed a brief in support of the petition, arguing plea counsel was ineffective for failing

A-2154-20

to file a motion to dismiss the charge, allowing defendant to plead guilty, and failing to preserve the issue for appeal. Counsel asserted defendant did not commit a crime because "[n]o allegation was made and no evidence was produced that [defendant] had accessed his sister's computer for criminal or otherwise inappropriate activity." Counsel reiterated the internet ban was unduly restrictive and ignored federal and state court precedent. Also, there were material facts in dispute necessitating an evidentiary hearing.

The PCR judge issued a written decision. The judge found he had "no direct, competent evidence that could establish . . . counsel failed to inform defendant" of his right to make a motion to dismiss the indictment. Rather, the plea and sentencing transcripts showed plea counsel "was well aware of the issue . . . and had met with . . . defendant multiple times to discuss, among other things, pretrial motions that could be filed. . . . [Plea counsel] also addressed the question of constitutionality at length at the time of the defendant's sentence . . . ." The judge found no need for an evidentiary hearing because there was no prima facie evidence presented under the first Strickland[4] prong showing counsel was ineffective. There was "no evidence against which to balance the statements made by [plea counsel] at the plea, at the sentence[,] and in her

---

[4] Strickland v. Washington, 466 U.S. 668, 687 (1984).

sentencing memorandum."  He also noted the second <u>Strickland</u> prong was not met because defendant never argued "he would have elected to go to trial rather [than] plead guilty."

The judge found defendant provided no authority for his argument that a blanket ban on accessing the internet was unconstitutional.  Further, the defense did not "address[] the specific facts that resulted in . . . defendant being subject to said blanket prohibition.  The defense has not recognized the significance of defendant's pre-arrest application to relieve him of said restrictions."  Moreover, "[t]he defense has not accounted for . . . defendant's clear ability to observe the internet job postings and to even apply for a job on the internet so long as his sister . . . was the person actually using the internet as he merely observed."[5]

Defendant raises the following points on appeal:

> POINT ONE:  [DEFENDANT]'S SENTENCE IS ILLEGAL BECAUSE THE CSL SPECIAL CONDITION BANNING INTERNET USE IS OVERBROAD AND CRIMINALIZES HIS USE OF FREE SPEECH, IN VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPHS 6 AND 18 OF THE NEW JERSEY CONSTITUTION, ON ITS FACE AND AS APPLIED.

---

[5]  The judge also concluded judicial estoppel applied because "having been advised of the constitutional challenge that he could have made by pre-trial motion, elected to enter a plea."

POINT TWO: [DEFENDANT] IS ENTITLED TO RELIEF ON HIS CLAIM THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO DISMISS, AND ALLOWING HER CLIENT TO PLEAD[] TO AN UNCONSTITUTIONAL OFFENSE.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). It provides "a built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)). Rule 3:22-2 provides a PCR claim is cognizable if, among other reasons, defendant was substantially denied his rights under the United States or the New Jersey State Constitution or its laws, or defendant's sentence was illegal.

Typically, a guilty plea "amounts to a waiver of all issues, including constitutional claims, that were or could have been raised in prior proceedings." State v. Marolda, 394 N.J. Super. 430, 435 (App. Div. 2007). "A petitioner is generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal, R. 3:22-4(a), or that has been previously litigated, R. 3:22-5." Nash, 212 N.J. at 546. However, "[a] motion may be filed and an order may be entered at any time . . . correcting a sentence not authorized . . . ." Rule 3:21-10(b)(5). "[A]n illegal sentence is one . . . 'not imposed in accordance with

9

law.'" State v. Acevedo, 205 N.J. 40, 45 (2011) (quoting State v. Murray, 162 N.J. 240, 247 (2000)).

The Strickland standard requires a defendant show counsel rendered substandard professional assistance that prejudiced the outcome of the proceedings. Strickland, 466 U.S. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland standard). "[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)). We review a PCR court's legal conclusions de novo. Ibid.

Defendant argues the CSL condition banning internet use is overbroad and infringes on his right to free speech in violation of the United States and New Jersey Constitutions. He cites Packingham v. North Carolina, 582 U.S. ___, 137 S. Ct. 1730 (2017) and State v. R.K., 463 N.J. Super. 386 (App. Div. 2020) in support of his position. He claims the CSL provision is more restrictive than the statute analyzed in Packingham because it criminalizes internet access in general rather than social media sites. He notes R.K. applied Packingham in concluding CSL provisions banning internet use can be unconstitutionally

overbroad. As a result, defendant asserts his sentence was illegal and asks us to remand to permit him to withdraw the plea.

Defendant also cites J.I., where our Supreme Court reversed a defendant's conviction because the internet ban implicated due process concerns and was not reasonably tailored. He notes the ban in his case is even more restrictive than J.I. because it prohibited all use of the computer, including to look for a job. Although defendant acknowledges his federal conviction involved the use of the internet to commit an offense, he argues his state offense did not involve the internet. Further, his federal parole provisions did not impose a total internet ban, which proves the state restriction is overbroad, not tailored to meet the parole board's goals, does not pass constitutional muster, and renders his sentence illegal.

Defendant argues plea counsel was per se ineffective. United States v. Cronic, 466 U.S. 648, 659 (1984). He notes Packingham was over two years old at the time of his plea and sentence and counsel should have moved to dismiss based on the unconstitutionality of the ban. He claims he would not have pled guilty if there was a possibility the case would be dismissed.

Defendant asserts the PCR judge made credibility findings regarding defendant's explanation of why he was using the internet without holding an

11

evidentiary hearing. Further, the judge did not explain how he concluded that plea counsel likely discussed constitutionality of the CSL provision with defendant and why he concluded defendant decided to plead guilty regardless of the constitutionality issue.

"CSL is a 'component' of Megan's Law which 'has its statutory source in N.J.S.A. 2C:43-6.4, the Violent Predator Incapacitation Act.'" R.K., 463 N.J. Super. at 400 (quoting State v. Schubert, 212 N.J. 295, 305 (2012)). CSL "was 'designed to protect the public from recidivism by defendants convicted of serious sexual offenses.'" Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 237-38 (2008) (quoting Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181, 184 (App. Div. 2004)). "The [b]oard has broad authority to impose conditions, so long as the conditions are 'deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior.'" R.K., 463 N.J. Super. at 400 (quoting N.J.S.A. 30:4-123.59(b)(1)).

N.J.A.C. 10A:72-14.1(a) "applies to the imposition of a special condition prohibiting an offender access to the [i]nternet . . . in the cases of offenders serving a special sentence of [CSL]." The regulation allows a special condition prohibiting internet access if: 1) "[t]here is a specific and articulable reason and a clear purpose for the imposition of the [i]nternet access condition;" and 2)

"[t]he imposition of the [i]nternet access condition will act as an aid to the offender's re-entry effort, will promote the rehabilitation of the offender, is deemed necessary to protect the public, or will reduce recidivism by the offender." N.J.S.A. 10A:72-14.1(b)(1) and (2). Under certain circumstances, restrictions can include prohibiting an offender "from the possession and/or utilization of any computer and/or device that permits access to the [i]nternet unless specifically authorized by the [parole supervisor] or designee." N.J.A.C. 10A:72-14.1(c)(1). The condition is subject to annual review and a defendant can be granted internet access if it is "consistent with the continued rehabilitation of the offender and will not compromise public safety;" the offender complies with supervision conditions; has met the case plan agreement goals "and is progressing in a pro-social manner;" and the offender's treatment provider opines access will promote rehabilitation and re-entry efforts. N.J.A.C. 10A:72-14.4(a), (c)(1) to (5).

In J.B. v. New Jersey State Parole Board, we rejected the defendants' challenge to a social media ban, finding it was "legitimately aimed at restricting . . . offenders from participating in unwholesome interactive discussions on the [i]nternet with children or strangers who might fall prey to their potential recidivist behavior." 433 N.J. Super. 327, 341 (App. Div. 2013). However, we

13

noted "it is not the Parole Board's intention that these provisions bar appellants from having [i]nternet access to news, entertainment, and commercial transactions." Id. at 342.

Four years later, but before Packingham, our Supreme Court decided J.I., and invalidated the "near-total [i]nternet ban" stating "[t]he complete denial of access to the [i]nternet implicates a liberty interest, which in turn triggers due process concerns." 228 N.J. at 211. "Internet conditions should be tailored to the individual CSL offender, taking into account such factors as the underlying offense and any prior criminal history, whether the [i]nternet was used as a tool to perpetrate the offense, the rehabilitative needs of the offender, and the imperative of public safety." Id. at 224. The Court held the ban was "[a]rbitrarily imposed" and "not tethered" to the objectives of "promot[ing] public safety, reduc[ing] recidivism, and foster[ing] the offender's reintegration into society." Id. at 211. Any internet access condition imposed on a CSL offender "must bear a reasonable relationship" to furthering those objectives. Id. at 222.

After J.I., the United States Supreme Court decided Packingham, invalidating a North Carolina statute criminalizing access to a social media website where the sex offender knew the site allowed minors to be members.

137 S. Ct. at 1733-35. The Court held the statute violated the First Amendment and was overbroad because it prohibited access to commercial and news websites. Id. at 1736-37.

We applied the J.I. factors in four consolidated appeals challenging social-networking, internet, and monitoring conditions, and upheld those conditions. K.G. v. N.J. State Parole Bd. 458 N.J. Super. 1, 23-30 (App. Div. 2019). In discussing the facts in one of the cases, we noted circumstances similar to defendant's here, namely:

> (1) [the] underlying offense involved the use of the [i]nternet and social-networking websites to solicit the minor; (2) [the defendant] consciously violated his previous [i]nternet-use conditions; (3) [the defendant] had not yet demonstrated a substantial period of compliance with conditions of PSL since his release from custody in December 2016; and (4) [the defendant] was working at a convenience store and had not demonstrated the need to use the [i]nternet or social-networking websites for a professional purpose.
>
> [Id. at 37.]

We concluded that given "the nature of [the defendant's] underlying offense and his history of violating PSL conditions restricting [i]nternet access" the internet ban was "reasonably tailored to advance goals of public safety and rehabilitation and are not arbitrary, capricious, and unreasonable as applied to [that defendant]." Id. at 37-38.

A-2154-20

In Holena, the defendant was subject to a condition of supervised release forbidding him from using the internet without his probation officer's approval. 906 F.3d at 290. After violating the provision, the defendant was forbidden from using any "computers, electronic communications devices, or electronic storage devices" for life. Ibid. The Third Circuit held the provisions were unconstitutional because they contradicted one another and were not reasonably tailored to the defendant's conduct and history. Id. at 291-92. The court set forth three factors to consider in conducting the fact-sensitive analysis regarding an internet ban: "the restriction's length, its coverage, and 'the defendant's underlying conduct.'" Id. at 292 (quoting United States v. Heckman, 592 F.3d 400, 405 (3d Cir. 2010)). Similarly, in United States v. Eaglin, the Second Circuit reversed a categorical prohibition on the defendant's use of any device to access the internet because the prohibition was not warranted by the defendant's history or necessary to further the goals of deterrence, public safety, or rehabilitation. 913 F.3d 88, 99 (2d Cir. 2019).

In R.K., the defendant argued his sentence was illegal because he was subject to an unconstitutional regulation imposing a social networking ban. 463 N.J. Super. at 392-93. The regulation required all sexual offenders on CSL to "[r]efrain from using any computer and/or device to create any social

16

networking profile or to access any social networking service or chat room in the offender's name or any other name for any reason unless expressly authorized by the District Parole Supervisor." Id. at 401. We held the regulation's "blanket social media prohibition is both unconstitutional on its face and as applied to R.K." since it infringed on his right to free speech. Id. at 392-93. Applying Packingham, we reasoned the automatic ban rendered the defendant's sentence invalid. Id. at 409-10. We stressed:

> [T]he [b]oard's regulations must avoid blanket bans on such valued rights. Supervised release conditions must be specifically designed to address the goals of recidivism, rehabilitation, and public safety, which are specifically tied to the individual parolee's underlying offenses. Statutes and regulations must not afford parole supervisors and officers unlimited personal discretion to determine what conditions are constitutionally permissive.
>
> [Id. at 417-18.]

Applying these principles, we conclude defendant's CSL internet ban was constitutional and appropriately tailored. Contrary to defendant's assertion, his restriction under N.J.A.C. 10A:72-14.1 differs from the condition imposed in R.K. and is not facially unconstitutional. In a facial challenge, "the challenger must establish that no set of circumstances exist under which the [statute] would be valid." Dempsey v. Alston, 405 N.J. Super. 499, 510 (App. Div. 2009)

17

(alteration in original) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). "[T]he question is whether the 'mere enactment' of a statute offends constitutional rights." Ibid. (quoting Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 295 (1981)). As noted, the regulation in R.K. prohibited all CSL offenders from any access to social media unless otherwise authorized. The regulation here is more nuanced in that it permits an internet ban if:

> 1. There is a specific and articulable reason and a clear purpose for the imposition of the [i]nternet access condition; and
>
> 2. The imposition of the [i]nternet access condition will act as an aid to the offender's re-entry effort, will promote the rehabilitation of the offender, is deemed necessary to protect the public, or will reduce recidivism by the offender.
>
> [N.J.A.C. 10A:72-14.1(b).]

For these reasons, defendant's facial challenge fails.

We reach a similar conclusion regarding defendant's as applied challenge to the regulation. The facts here meet all of the K.G. factors. Indeed, defendant's federal conviction involved the use of the internet to solicit a minor; he consciously violated the internet restriction by admitting to parole officers he purchased a program to bypass the computer password; defendant did not

18

demonstrate a substantial period of compliance with the conditions of CSL since he had only been released from custody for a short period of time before he violated the ban; and his professed reason for accessing the internet was neither a necessity nor a relief he could not have sought from the parole board.

We review trial counsel's performance with extreme deference and "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" State v. Fisher, 156 N.J. 494, 500 (1998) (quoting Fritz, 105 N.J. at 52). Prejudice is not presumed and must be proven by defendant. Ibid. To set aside a guilty plea based on ineffective assistance of counsel, a defendant must show: "(i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (citations omitted).

Our rejection of defendant's facial and as applied challenges to N.J.A.C. 10A:72-14.1 establishes that plea counsel's performance was not deficient and did not prejudice defendant or the outcome of his case. Preciose, 129 N.J. at 463-64. Because defendant failed to demonstrate a prima facie case of ineffective assistance of counsel, an evidentiary hearing was not required.

The remainder of defendant's arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2154-20