# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2516-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARK DEBIASSE,
a/k/a MARK T. DEBIASSE,
MARK DEBIASSI, MARK
DEBASSIE, MARK THOMAS
DE BIASSE, and MARK DE BIASSE,

    Defendant-Appellant.

_____

Argued December 19, 2024 – Decided January 16, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 21-09-0540 and 22-01-0059.

Ashley T. Brooks, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Morgan A. Birck, Assistant Deputy Public Defender, of counsel and on the briefs).

Bethany L. Deal, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Bethany L. Deal, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Mark Debiasse appeals from the December 17, 2021 order denying his motion to suppress thousands of items depicting the sexual abuse or exploitation of a child (CSAEM) found on his personal electronic devices. He also appeals from judgments of conviction entered on February 2, 2023, after he pleaded guilty to second-degree endangering the welfare of children based on possession of more than 1,000 items depicting CSAEM, N.J.S.A. 2C:24-4(b)(5)(b)(ii), and fourth-degree violation of a special sentence of community supervision for life (CSL), N.J.S.A. 2C:43-6.4(d). We affirm.

I.

Defendant has been subject to a special sentence of CSL since 2000 and has a long history of CSL violations as well as a prior conviction for possession of CSAEM. On November 1, 1996, defendant was convicted of second-degree endangering the welfare of children, N.J.S.A. 2C:24-4(b)(5)(a), for taking nude and sexually provocative photographs of young children he was babysitting. His sentence included a special sentence of CSL

and required that he register as a sex offender under Megan's Law, N.J.S.A. 2C:7-1 to -23.

Upon his release from prison in 2000, the State Parole Board (Board) placed defendant on CSL. On July 16, 2000, he signed and acknowledged the general condition of CSL. On August 18, 2000, defendant's parole supervisor added a special condition of CSL prohibiting him "from having any access to the internet" based on a report he contacted a twelve-year-old girl by email and then met her at a local restaurant.

In February 2001 and March 2002, he pleaded guilty to two counts of failure to register as a sex offender. On April 8, 2002, defendant was sentenced to sixty days in jail for failure to register. Upon his release in June 2002, defendant's parole supervisor imposed as a special condition of CSL that he "refrain from the possession or use of a computer with internet access" and "refrain from having any accounts with any internet service provider." On June 24, 2002, defendant signed a memorandum acknowledging those special conditions. On July 31, 2002, the Board imposed the following amended special conditions:

> [Defendant] is to refrain from possessing or using, which shall include employment, a computer with access to the internet without the prior written approval of the parole officer; [defendant] is to refrain from

having an account with any internet service provider; and [defendant] is to permit periodic unannounced examination of any computer equipment in his possession by the parole officer or assigned computer specialist, including retrieval and copying of all data from the computer and any internal or external peripherals and removal of such equipment to conduct a more thorough examination. . . .

In April 2002, after pleading guilty, defendant was again convicted of failure to register as a sex offender and sentenced to sixty days in jail. In September 2002, following a guilty plea, he was convicted of a violation of CSL and sentenced to ninety days in jail. In March 2003, following a guilty plea, he was convicted of a violation of CSL and sentenced to 141 days in jail.

During a home visit in March 2006, a parole officer found a computer belonging to defendant. An entry in defendant's chronological supervision report (CSR) provides: "[Defendant] stated that [the] computer observed . . . in his room does not have internet access. He stated that he is not allowed internet access per special condition." A subsequent CSR entry notes, "there was no evidence that . . . [defendant was] . . . notified in writing of the [amended] condition" of July 31 subjecting him to unannounced searches, and therefore "[the parole officer] was not to search . . . [defendant's] computer until [defendant was] . . . provided with the written [amendment]." On April 25, 2006, defendant signed a letter from the Board "acknowledg[ing] that [he had]

been informed" of the special conditions imposed on June 31, 2002. On April 28, 2006, following a guilty plea, defendant was convicted of a violation of CSL and sentenced to one day in jail.

During a home visit in June 2006, a parole officer found defendant in possession of a computer with internet access. A forensics investigation revealed "[m]any [fourteen] and [thirteen-year-old] females were located [in defendant's] written notes" on MySpace. On August 3, 2007, following guilty pleas to two separate indictments, he was convicted of two counts of violation of CSL and sentenced to 365 days in jail.

In June 2007, during a home visit, a parole officer discovered a laptop and police scanner in defendant's possession. The officer noted the Madison Police Department suspects "[defendant] goes to Madison Public Library to access the internet" and "[w]hen a call comes in to [the police] of a suspicious male at [the 1]ibrary and [the] call goes out to a unit, [defendant] hears the call on [the] scanner and leaves."

In April 2012, defendant was at the Morristown Public Library using an iPod Touch to access the internet over the library's public WiFi, in violation of his special conditions of CSL. Defendant was in possession of over 1,000 items containing CSAEM and admitted "he ha[d] been going on social networking

5

sites" such as Radoo, TextPlus, HookUp, MyYearbook, and Flirt MSP "where he flirt[ed] with females." Defendant was engaging in online conversations with children during which they discussed fondling and touching themselves in intimate areas. He also "ha[d] two flash drives [in] his room that contained pornographic pictures of children/females he believed to be between [fifteen] to [fifty] years old." He pleaded guilty to one count of violation of CSL and one count of second-degree endangering the welfare of children, N.J.S.A. 2C:24-4(b)(5)(a), for possession of between 1,000 and 100,000 items depicting CSAEM. On July 31, 2015, he was sentenced to five years in prison for endangering and one year for the CSL violation. He was released on September 21, 2016.

At the time of his release, defendant remained subject to the special sentence of CSL imposed in 1996. He was presented with an "amended certificate" containing the general conditions of CSL. Defendant refused to sign the general conditions. The general conditions provide, in part:

> 20. I am to submit to a search conducted by a parole officer, without a warrant, of my person, place of residence, vehicle[,] or other real or personal property within my control at any time a parole officer has a reasonable, articulable basis to believe that a search will produce contraband or evidence that a condition of supervision has been violated, is being violated or is about to be violated and permit the confiscation of

contraband.

. . . .

22. I am to refrain from using any computer and/or device to create any social networking profile or to access any social networking service or chat room, in my name or any other name for any reason unless expressly authorized by the [d]istrict [p]arole [s]upervisor.

B[.] I understand that if the victim(s) of an offense committed by me is a minor . . . I am to refrain from initiating, establishing[,] or maintaining contact with any minor . . . .

On October 20, 2016, defendant's parole supervisor presented him with three documents titled "Notice of Imposition of Special Condition." Each document advised defendant "[t]he determination has been made to impose the following special condition in [his] case." The first compelled defendant to "enroll in and participate in a mental health counseling program designated to provide treatment for sex offenders" (special condition one). The second prohibited defendant from "purchasing, viewing, downloading, possessing . . . or creating" items "predominantly oriented to descriptions or depictions of sexual activity" (special condition two).

The third notice (special condition three) provided:

I am to refrain from the possession and/or utilization of any computer and/or device that permits access to the

7

[i]nternet unless specifically authorized by the [d]istrict [p]arole [s]upervisor. If the [d]istrict [p]arole [s]upervisor permits use of a computer and/or device that is capable of accessing the [i]nternet, I understand that I am subject to the following restrictions and conditions concerning my use:

1. I am to refrain from accessing the [i]nternet from any computer and/or device at [any time] or for any reason unless authorized by the [d]istrict [p]arole [s]upervisor;

2. I am prohibited from possessing or using any data encryption techniques and/or software programs that conceal, mask, alter, eliminate and/or destroy information and/or data from a computer and/or device;

3. I agree to install on the computer and/or device, at my expense, one or more hardware or software system(s) to monitor my computer and/or device use if such hardware or software system(s) is (are) determined to be necessary by the [d]istrict [p]arole [s]upervisor;

4. I agree to permit the monitoring of my computer and/or device activity by a parole officer and/or computer/device specialist through the use of electronic means;

5. I am subject to periodic unannounced examinations of the computer and/or device by a parole officer or designated computer/device specialist, including the retrieval and copying of all data from the computer and/or device and any internal or external peripherals and removal of such equipment to conduct a more thorough inspection[;]

6. I am to disclose all passwords used by me to access

8

any data, information, image, program, signal[,] or file on my computer/device.

The following justification for the special condition was provided:

Condition is being imposed on [defendant] to ensure he does not have access to the internet due to a violation stemming from internet use. On June 24, 2002, [defendant] was imposed a special condition where he is to refrain from possessing or using a computer with access to the internet without the written approval of the parole officer. [Defendant] continued to use the internet to contact minors, despite his CSL special condition prohibiting him from doing so. His computers were seized three times by this agency[,] and he continued to obtain new computers with internet connections, regardless of him being ordered not to do so. On [April 25, 2012], [defendant] admitted to being on social networks: Radoo, Text Plus, Hook Up, My Yearbook, and Flirt MSP, while knowing that it was against his conditions of [p]arole . . . . [D]efendant also admitted [to] having pictures of child pornography on his [iP]od. [Defendant] was charged with [v]iolation of condition of special sentence and EWC/[distribution], [possession with intent to distribute], [possession] of [p]hoto [r]eproduction of [c]hild in [p]rohibited [s]ex. [Defendant] was sentenced to [five] years with credit for time served. By imposing a more restricted special condition mandating no internet use, it would offer the structure [defendant] needs to refrain from re-offending or having access to his triggers.

Defendant signed the three notices, and wrote, "I [acknowledge receipt] of" above his signature. On October 26, 2016, the Board reviewed and approved the special conditions set forth in the notices defendant signed on

A-2516-22

October 20 and entered electronic notices of the approval in defendant's CSR. Entries in the CSR indicate defendant enrolled in counseling as required by the special condition no later than November 7, 2016. Numerous entries in the CSR indicate that when defendant spoke with his parole officers he denied "use of internet or other violation of his conditions," "any law enforcement contact, internet use, pornography, victim/minor contact, or any other CSL violations," and "internet use, internet [devices], pornography, victim/minor contact or any other CSL violations."

In April 2019, Senior Parole Officer Bogdan Serobaba was assigned to defendant's case. Officer Serobaba testified at the suppression hearing on October 5, 2021. He was not defendant's parole officer when the special conditions were imposed in 2016 and did not know if defendant was notified that the Board approved the special conditions. He testified it is his practice to notify parolees only if the Board rejects or modifies the special conditions imposed. In this case, they were approved exactly as set forth in the written notices defendant received and signed.

Officer Serobaba attempted to contact defendant at his home several times without success. Eventually, he left a letter on defendant's door directing him to call as soon as possible. Defendant called the next day from his work phone

10

contending he did not own a cell phone. On May 30, 2019, they met for the first time and defendant advised Officer Serobaba he did not have a cell phone or any internet capable devices. Officer Serobaba requested defendant obtain a "flip phone" or "burner-type" cell phone so he could contact him more easily and advise him of the phone number once he did. Defendant indicated he understood.

At their next meeting in August 2019, Officer Serobaba again asked defendant to obtain a cheap flip phone. Defendant said he did not have the money to obtain a phone. He also told Officer Serobaba his inability to access the internet was impacting his ability to find employment because applications were often online.

On September 26, 2019, Officer Serobaba and another officer conducted a routine visit at defendant's residence, but he was not home. A neighbor directed them to the building superintendent who told them defendant did have a cell phone and provided them with defendant's phone number. Officer Serobaba called the number, but it went straight to voicemail. Defendant arrived home while the officers were still there. Defendant initially denied having a cell phone but eventually admitted he did and pulled a black smartphone from his bookbag. Defendant turned it on and handed it to Officer Serobaba. Officer

11

Serobaba immediately observed notifications for social media sites appear on the screen indicating defendant was violating his conditions of CSL. The officer explained why in the following colloquy:

> [STATE:] Okay. And so, seeing those notifications for social media sites, did that indicate to you that that might have been a violation of a condition?
>
> [OFFICER SEROBABA:] Absolutely.
>
> [STATE:] Okay. And what condition . . . or conditions would he have violated by having social media?
>
> [OFFICER SEROBABA:] It could be using the [i]nternet. It could be having unsupervised contact with minors. It could be pornography. It could be several conditions.

Defendant was arrested and charged with a violation of CSL. A subsequent search of his home revealed three additional cell phones, USB drives, and a laptop computer. He refused to provide the passwords for the devices. On December 16, officers conducted a forensic examination of the devices seized. The search of his cell phones revealed nearly 1,000 items depicting CSAEM. The USB drive contained 1,400 items depicting CSAEM. Defendant also hosted thousands of videos on cloud-based drives the investigators were unable to access. They obtained communication data warrants (CDWs) for Google and Dropbox that revealed thousands of images

A-2516-22

and hours of video showing children being sexually abused.

Defendant's laptop contained approximately 116,590 image files, including "[t]housands of nude images of [young teens/pre-teens] (teen pornography) and numerous images of children clothed," images of CSAEM, and additional images of potential CSAEM. Defendant was released pending trial.

On November 21, 2019, during a parole office visit, defendant admitted he obtained another cell phone. A subsequent examination of the phone revealed it was internet capable, and defendant used internet search engines to view "images [and] videos of what appears to be minor children."

Defendant was indicted in Indictment No. 21-09-0540-I for one count of violation of CSL based on the November 21, 2019, incident. He was indicted separately for three counts of fourth-degree violation of CSL, N.J.S.A. 2C:43-6.4(d), and one count of second-degree endangering the welfare of children, N.J.S.A. 2C:24-4(b)(5)(b)(ii), for possession of CSAEM based on the September 26, 2019, incident.

Defendant moved to suppress the evidence obtained from the warrantless search conducted on September 26, 2019 and subsequent forensic examinations of his electronic devices and file sharing platforms. He argued the special

conditions of CSL, including the prohibition on unauthorized internet-connected devices, were not enforceable because the State could not prove he was notified they were approved by the Board, in violation of N.J.A.C. 10A:71-6.11(k). He also argued the prohibitions on his use of social media and unauthorized internet-connected devices were unconstitutional facially and as applied to him. On October 5 and December 17, 2021, the court conducted a hearing on defendant's motion.

On December 17, 2021, the court entered an order denying the motion to suppress supported by an oral opinion. The court found Officer Serobaba credible. It found special condition three was not unconstitutional as applied to defendant based on his pattern of contacting minors using the internet and using electronic devices with internet access to obtain and possess CSAEM. The court also found the special condition was "reasonably tailored" to achieve the goal "of avoiding recidivism" and "necessary to protect the public."

The court found "there is no question . . . defendant was aware he was not permitted to access the [i]nternet or possess a device with such access unless permitted by [p]arole." It also determined, "[i]t is undisputed that . . . defendant did not seek permission to access the [i]nternet in or around September 26, 2019. Instead, . . . defendant lied about even having a cell phone." The court reasoned

as follows:

> [S]hould this [c]ourt deem the social media ban unconstitutional, it does not invalidate [p]arole's seizure and search of . . . defendant's phone. The credible evidence demonstrates that . . . defendant initially lied about having a phone. Only after being confronted a second time did . . . defendant finally admit to having a phone.
>
> Once . . . defendant produced the phone, the officer was completely within his authority to conduct a periodic unannounced check of the phone. Thus, even absent Officer Serobaba observing the social media notification on . . . defendant's phone[, a] search of the phone was legally permissible.

On January 25, 2022, defendant was charged in a superseding indictment, No. 22-01-0059-I, with three counts of fourth-degree violation of CSL, N.J.S.A. 2C:43-6.4(d); one count of second-degree endangering the welfare of children, N.J.S.A. 2C:24-4(b)(5)(b)(ii); one count of first-degree endangering the welfare of children, N.J.S.A. 2C:24-4(b)(5)(a)(ii); and one count of first-degree endangering the welfare of children, N.J.S.A. 2C:24-4(b)(5)(a)(iii).

On April 1, 2022, he pleaded guilty to one count of fourth-degree violation of CSL as charged in Indictment No. 21-09-0540-I, and one count of second-degree endangering the welfare of children based on possession of between 1,000 and 100,000 items depicting CSAEM as charged in Indictment No. 22-01-0059-I. In exchange, the State agreed to recommend a sentence of ten years in

15

prison for endangering the welfare of children and a concurrent sentence of eighteen months in prison for violation of CSL.

At the plea hearing, defendant testified that on September 26, 2019, he possessed cell phones, laptop computers, and USB drives that contained at least 1,000 items depicting CSAEM including over 1,000 items stored on the file sharing platforms Google Drive and Dropbox. Defendant admitted he knowingly possessed the items depicting CSAEM with the intent to distribute them. He also admitted that on November 21, 2019, he knowingly possessed a laptop computer and smart phones that were able to connect to the internet. Defendant understood "that by virtue of simply possessing these items with internet access, [he was] violating a special condition of [his CSL]."

On February 3, 2023, the court sentenced defendant in accordance with the plea agreement. It sentenced him to the Adult Diagnostic and Treatment Center pursuant to N.J.S.A. 2C:47-3 based on its finding his conduct was characterized by a pattern of repetitive and compulsive behavior. The court sentenced defendant to Parole Supervision for Life (PSL)[1] and ordered he register as a sex offender under Megan's Law.

---

[1] In 2003, the Legislature amended N.J.S.A. 2C:43-6.4 and replaced CSL with PSL. See L. 2003, c. 266, § 2. Defendant's special sentence of PSL will begin upon his release from custody.

Defendant raises the following points for our consideration on appeal.

POINT I

BECAUSE THE PAROLE BOARD FAILED TO FOLLOW ITS REGULATIONS FOR IMPOSING SPECIAL CONDITIONS, AND THE PAROLE OFFICER FURTHER MUDDIED THE WATERS IN DEMANDING [DEFENDANT] OBTAIN A CELL PHONE, THE IMPOSITION OF THE SPECIAL CONDITION VIOLATED [DEFENDANT'S] RIGHTS TO DUE PROCESS.

POINT II

A NEAR-BLANKET BAN ON USING THE INTERNET AS A CONDITION OF CSL IS UNCONSTITUTIONAL.

A. The condition that banned all use of social media could not be enforced, because as held in R.K.,[2] the condition is unconstitutional on its face.

B. The device and internet bans facially violate the First Amendment because they are overboard.

C. Even if the internet ban here was not unconstitutional on its face, it is unconstitutional as applied to [defendant].

In defendant's pro se brief, he raises the following additional arguments:

---

[2] State v. R.K., 463 N.J. Super. 400 (App. Div. 2020).

POINT I

[NEW JERSEY] PAROLE MIXED UP THE GUIDELINES OF SPECIAL CONDITIONS FOR LIFE (CSL) WITH PAROLE SUPERVISION FOR LIFE (PSL) GUIDELINES AND THEY DO NOT FOLLOW ALL CSL GUIDELINES FOR CSL SPECIAL CONDITIONS.

POINT II

PERSONS SERVING A SPECIAL SENTENCE OF [CSL] SHALL BE SUPERVISED AS IF ON PAROLE, THE INDIVIDUAL IS NOT ACTUALLY ON PAROLE.

POINT III

STATE EVIDENCE (S2) CSL CONDITION [JULY 16, 2000] ARE NOT THE SAME AS (S8) CSL AMENDED CERTFICATE CONDITIONS [SEPTEMBER 21, 2016], WHAT CONDITIONS IS PAROLE USING ON MY SUPERVISION, (S2) or (S8)?

II.

Our standard of review for a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). We defer to a trial court's factual findings in a suppression hearing "when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). This deference is in recognition of the trial court's "'opportunity to hear and see the witnesses and

18                                                                    A-2516-22

to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Appellate courts "will not disturb the trial court's factual findings unless they are so clearly mistaken that the interests of justice demand intervention and correction." State v. Goldsmith, 251 N.J. 384, 398 (2022) (internal quotation marks and citations omitted). However, legal conclusions to be drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022); State v. Hubbard, 222 N.J. 249, 263 (2015).

We are unpersuaded by defendant's claim that Officer Serobaba did not have reasonable suspicion to conduct a search of defendant's home or possessions on September 26, 2019. Officer Serobaba testified credibly that defendant repeatedly misrepresented he did not have a cell phone and attempted to hide the cell phone from him after he obtained defendant's phone number from the building superintendent. Officer Serobaba testified after learning defendant did have a cell phone that he was hiding from his parole officers, he had reason to believe defendant was violating numerous conditions of CSL. "It could be using the [i]nternet. It could be having unsupervised contact with minors. It could be pornography. It could be several conditions."

We are also unconvinced by defendant's contention that Officer Serobaba did not have a valid basis to seize his phone and search his residence because he was not violating any enforceable conditions of CSL. Although defendant challenges the special condition imposed on October 20, 2016, because the State cannot prove he was advised that the Board approved them, he cannot challenge the general conditions because no such subsequent approval was required. Pursuant to general condition twenty, defendant was required to submit to a search without a warrant if a parole officer had a reasonable, articulable basis to believe a condition of CSL was violated. Sex offenders subject to CSL have a reduced expectation of privacy and are required to permit warrantless searches of their residence and property. State v. Maples, 346 N.J. Super. 408, 415 (App. Div. 2002).

One of the conditions Officer Serobaba had reason to believe was being violated was the prohibition on contact with minors. That condition is also included in the general conditions and did not require subsequent Board approval. Based on Officer Serobaba's credible testimony, he had a reasonable, articulable basis to believe defendant violated that general condition and, therefore, was authorized to search defendant's residence and personal property.

We are not persuaded the special conditions imposed on October 20, 2016, were unenforceable based on the alleged violation of N.J.A.C. 10A:71-6.11(k). That code section provides:

> Additional special conditions may be imposed by the [d]istrict [p]arole [s]upervisor . . . when there is a reasonable belief that such conditions would reduce the likelihood of recurrence of criminal behavior. The offender and the Board shall be given written notice upon the imposition of such conditions.
>
> > 1. Upon notice being received by the Board, the appropriate Board panel shall review the offender's case and determine whether to vacate, modify[,] or affirm the additional special condition(s).
> >
> > 2. The Board panel shall notify the [d]istrict [p]arole [s]upervisor of its determination within three working days of receipt of notice of the imposition of the additional special condition(s).
> >
> > 3. The [d]istrict [p]arole [s]upervisor shall notify the offender in writing of the determination of the Board panel and shall cause a written record of such notice to be made in the offender's case file.
> >
> > 4. A special condition shall not be deemed effective until affirmed by the appropriate Board panel.

There is no dispute on October 20, 2016, defendant was notified in writing of the imposition of special conditions one, two, and three. Also undisputed is that on October 26, the Board approved the special conditions exactly as they

21

were imposed and notified the district parole supervisor in writing they were approved through an electronic entry in defendant's CSR. Pursuant to N.J.A.C. 10A:71-6.11(k)(4), those special conditions were effective upon approval by the Board notwithstanding the alleged failure to advise defendant of the Board's action.

The record establishes defendant was aware the conditions were imposed and in effect. He enrolled in an approved mental health counseling program as required by special condition one within weeks of it being imposed. Numerous entries in the CSR demonstrate he was aware he was not permitted to possess or view pornographic material pursuant to special condition two or to possess unauthorized internet-connected devices or access the internet without permission in accordance with special condition three. In addition, at the time of his plea, defendant testified under oath he was aware on November 21, 2019, that "simply possessing" a laptop computer or smart phone was a violation of "a special condition of [his CSL]."

Because defendant was notified in writing that the special conditions were imposed and the record establishes he knew they were in effect, the failure to notify him the Board approved the conditions was merely a technical violation of the applicable regulations. A technical violation such as this does not amount

to a violation of due process and should not result in defendant being excused from the knowing violations of his conditions of CSL. See, e.g., State v. Moretti, 50 N.J. Super. 223, 248 (App. Div. 1958) (indicating courts should not revoke probation due to a mere technical violation).

Moreover, defendant does not assert any substantive challenge to special condition two, which prohibited him from possessing pornographic material. Because defendant does not assert any substantive challenge to that condition, he cannot claim he was deprived of his due process right to challenge it. Based on Officer Serobaba's testimony, he had a reasonable, articulable basis to believe defendant was viewing or in possession of "pornography" in violation of special condition two on September 26, 2019. That belief provided additional support for Officer Serobaba's search of defendant's residence and personal property.

We are satisfied the court determined correctly Officer Serobaba had the right to seize defendant's cell phone and search his residence and personal property on September 26, 2019, based on his reasonable, articulable belief defendant was in violation of at least two of his conditions of CSL. The subsequent forensic examinations of his electronic devices and file sharing platforms pursuant to a CDW were not tainted as fruit of the poisonous tree. The court correctly denied defendant's motion to suppress the CSAEM

23

recovered from the electronic devices seized on September 26, 2019.

III.

We next turn to defendant's claim that his conviction for violation of CSL based on his possession of internet-connected devices should be reversed because the prohibition on possession of such devices is unconstitutional facially and as applied to him. Before we address this argument, we note we do not reach defendant's claims relating to the social media ban or the ban on internet use because he was not convicted of violating those conditions and as discussed in Section II of this opinion, the search of defendant's residence and personal property was permissible based on other suspected CSL violations. In addition, upon his release from custody, he will be placed on PSL and will have the right to challenge any conditions imposed. N.J.A.C. 10A:71-6.6(b) ("A parolee may apply to the appropriate Board panel or the Board at any time for modification or vacation of a condition of parole."); N.J.S.A. 30:4-123.61(c) (permitting a parolee to apply for modification of conditions of parole).

"We consider legal and constitutional questions de novo." State v. Galicia, 210 N.J. 364, 381 (2012) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Content-neutral restrictions on speech are subject to what is characterized as intermediate scrutiny. Turner Broad. Sys.

24

v. F.C.C., 512 U.S. 622, 642 (1994). "In order to survive intermediate scrutiny, a law must be 'narrowly tailored to serve a significant governmental interest.'" Packingham v. North Carolina, 582 U.S. 98, 105-06 (2017) (quoting McCullen v. Coakley, 573 U.S. 464, 486 (2014)). This means that "the law must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" Id. at 106 (quoting McCullen, 573 U.S. at 486). "[A] condition [of supervised release] is 'not "narrowly tailored" if it restricts First Amendment freedoms without any resulting benefit to public safety.'" United States v. Holena, 906 F.3d 288, 294 (3d Cir. 2018) (quoting United States v. Loy, 237 F.3d 251, 266 (3d Cir. 2001)).

To show a statute is facially unconstitutional, "'the challenger must establish that no set of circumstances exists under which the [statute] would be valid.'" Dempsey v. Alston, 405 N.J. Super. 499, 510 (App. Div. 2009) (alteration in original) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). "[T]he question is whether the 'mere enactment' of a statute offends constitutional rights." Ibid. (quoting Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 295 (1981)).

"CSL is a 'component' of Megan's Law, which 'has its statutory source in N.J.S.A. 2C:43-6.4, the Violent Predator Incapacitation Act.'" R.K., 463 N.J. at

400 (quoting State v. Schubert, 212 N.J. 295, 305 (2012)). CSL "was 'designed to protect the public from recidivism by defendants convicted of serious sexual offenses.'" Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 237-38 (2008) (quoting Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181, 184 (App. Div. 2004)). Conditions of supervised release are intended to advance the State's interest in "protect[ing] the public and foster[ing] rehabilitation," N.J.S.A. 2C:43-6.4(b), as well as "reduc[ing] the likelihood of recurrence of criminal or delinquent behavior." N.J.S.A. 30:4-123.59(b)(1)(a).

With respect to constitutional challenges to special conditions of parole, we held in Pazden v. New Jersey State Parole Board, "a special condition of parole that cannot pass constitutional muster in the same strict sense that we demand of other statutes with penal consequences must fail." 374 N.J. Super. 356, 370 (App. Div. 2005). As such, we apply the same constitutional analysis for a special condition of parole as we would to a statute with penal consequences.

It is well-settled that the parole board may impose appropriately tailored restrictions on a sex offender sentenced to CSL, including restrictions on internet access, if the restrictions "bear a reasonable relationship to reducing the likelihood of recidivism and fostering public protection and rehabilitation." J.I.

v. N.J. State Parole Bd., 228 N.J. 204, 222 (2017). In J.I., our Supreme Court invalidated a "near-total [i]nternet ban" stating "[t]he complete denial of access to the [i]nternet implicates a liberty interest, which in turn triggers due process concerns." 228 N.J. at 211.

The Court held "[i]nternet conditions should be tailored to the individual CSL offender, taking into account such factors as the underlying offense and any prior criminal history, whether the [i]nternet was used as a tool to perpetrate the offense, the rehabilitative needs of the offender, and the imperative of public safety." Id. at 224. It found the ban in J.I.'s case was "[a]rbitrarily imposed" and "not tethered" to the objectives of "promot[ing] public safety, reduc[ing] recidivism, and foster[ing] the offender's reintegration into society." Id. at 211; see N.J.S.A. 2C:43-6.4(b). Any internet access condition imposed on a CSL offender "must bear a reasonable relationship" to furthering those objectives. J.I., 228 N.J. at 223.

After J.I., the United States Supreme Court decided Packingham v. North Carolina, invalidating a North Carolina statute criminalizing access to a social media website that the sex offender knew allowed minors to be members. 582 U.S. 98, 104 (2017). The Court held the statute violated the First Amendment

and was overbroad because it prohibited access to commercial and news websites. Id. at 108-09.

We applied the J.I. factors in four consolidated appeals challenging social-networking, internet, and monitoring conditions, and upheld certain of those conditions. K.G. v. N.J. State Parole Bd., 458 N.J. Super. 1, 23-30 (App. Div. 2019). In one of the cases, we upheld a ban on internet access because:

> (1) [the] underlying offense involved the use of the [i]nternet and social-networking websites to solicit the minor; (2) [the defendant] consciously violated his previous [i]nternet-use conditions; [and] (3) [the defendant] had not yet demonstrated a substantial period of compliance with conditions of PSL since his release from custody . . . .
>
> [Id. at 37.]

We concluded, given "the nature of [the defendant's] underlying offense and his history of violating PSL conditions restricting [i]nternet access," an internet ban was "reasonably tailored to advance goals of public safety and rehabilitation and [was] not arbitrary, capricious, and unreasonable as applied to [that defendant]." Id. at 37-38.

In United States v. Holena, the defendant was subject to a condition of supervised release forbidding him from using the internet without his probation officer's approval. 906 F.3d at 290. After violating the provision, the defendant

was forbidden from using any "computers, electronic communications devices, or electronic storage devices" for life.  Ibid.  The Third Circuit held the provisions were unconstitutional because they contradicted one another and were not reasonably tailored to the defendant's conduct and history.  Id. at 291-92.

The court set forth three factors to consider in conducting the fact-sensitive analysis regarding an internet ban:  "the restriction's length, its coverage, and 'the defendant's underlying conduct.'"  Id. at 292 (quoting United States v. Heckman, 592 F.3d 400, 405 (3d Cir. 2010)).  Similarly, in United States v. Eaglin, the Second Circuit reversed a categorical prohibition on the defendant's use of any device to access the internet because the prohibition was not warranted by the defendant's history or necessary to further the goals of deterrence, public safety, or rehabilitation.  913 F.3d 88, 99 (2d Cir. 2019).

In State v. R.K., the defendant argued his sentence was illegal because he was subject to an unconstitutional regulation imposing a social networking ban.  463 N.J. Super. at 392-93.  The regulation required all sexual offenders on CSL to "[r]efrain from using any computer and/or device to create any social networking profile or to access any social networking service or chat room in the offender's name or any other name for any reason unless expressly

authorized by the [d]istrict [p]arole [s]upervisor." Id. at 401. We concluded the regulation's "blanket social media prohibition is both unconstitutional on its face and as applied to R.K." because it infringed on his right to free speech. Id. at 393. Applying Packingham, we reasoned the automatic ban rendered the defendant's sentence invalid. Id. at 409-10. We stressed:

> [T]he Board's regulations must avoid blanket bans on such valued rights. Supervised release conditions must be specifically designed to address the goals of recidivism, rehabilitation, and public safety, which are specifically tied to the individual parolee's underlying offenses. Statutes and regulations must not afford parole supervisors and officers unlimited personal discretion to determine what conditions are constitutionally permissive.
>
> [Id. at 417-18.]

Applying these principles, we conclude the restriction on unauthorized internet-connected devices imposed in this case is not facially unconstitutional. There is no dispute sex offenders on CSL may be subject to appropriate limitations on the use of internet-connected devices, and such limitations may include supervision through electronic monitoring.

Unlike the internet and social media bans at issue in J.I., Packingham, and R.K., the restriction here applies to devices with access to the internet, not to content accessed on the internet. The restriction is necessary to facilitate the

30

Board's implementation of appropriate supervision of the use of internet-connected devices, including monitoring through the installation of software or hardware. Without such a restriction, the Board's imposition of appropriately tailored supervision and monitoring effectively would be meaningless; the Board would have no ability to prohibit the use of unmonitored, unsupervised devices. Because the restriction is narrowly tailored to accomplish the goal of imposing appropriate restrictions on the use of internet-connected devices, it is not facially unconstitutional.

We are disinclined to consider defendant's as applied challenge because he repeatedly and knowingly violated his conditions of CSL rather than seek modification of the conditions by lawful means. As our Supreme Court noted in J.I., "[w]e do not condone [such] violations because relief from overbroad or oppressive restrictions must be achieved through lawful means. A CSL offender must abide by the special conditions of [their] supervision unless and until relief is granted." 228 N.J. at 230; see also K.G., 458 N.J. Super. at 36. In this case, rather than seek relief by lawful means from what he contends are unreasonable restrictions, defendant opted to ignore the restrictions until he was charged with multiple CSL violations. Defendant cannot ignore his conditions of CSL and then complain only after he is charged with criminal conduct.

A-2516-22

However, we are convinced the court correctly determined the restriction on unauthorized internet-connected devices was not unconstitutional as applied to defendant. At the time the restriction was imposed, defendant had a lengthy criminal history involving the sexual abuse and exploitation of children. Those offenses included taking nude and sexually provocative photographs of very young children he was babysitting, possession of CSAEM, and engaging in inappropriate and sexually explicit communications with children over the internet. Defendant had been convicted of violating his conditions of CSL and failing to register as a sex offender at least nine times prior to 2016 and never demonstrated a substantial period of compliance with his CSL.

The prohibition on unauthorized internet-connected devices in this case was not overbroad or unreasonable. There is ample evidence in the record to support the Board's determination that defendant should be permitted only to possess authorized devices subject to monitoring and supervision. Such a restriction is narrowly tailored to permit defendant the ability to access the internet while also facilitating appropriate parole supervision. Rather than obtain an authorized device, defendant opted to ignore the restriction so he could, among other things, possess and share items depicting CSAEM and contact minors without detection by his parole officer.

Defendant's claim that parole "muddied the waters" by suggesting he obtain a flip phone or burner phone lacks merit. There is no plausible argument that suggesting he obtain a cell phone led him to believe he was authorized to possess and share CSAEM. In addition, on both September 26 and November 21, he was in possession of laptop computers and USB drives that he knew he was not permitted to possess. Officer Serobaba's suggestion that he obtain a flip phone or burner phone did not lead defendant to commit the offenses for which he was convicted.

The remainder of defendant's arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2516-22